EDWARD SMITH, Appellant, *v.* ROBINSON BROS. LUMBER COMPANY, Respondent.

*Principal and agent — common carrier not affected by secret instructions to the consignee's agent as to the amount to be paid for transportation.*

The general doctrine, that a special agent with special instructions cannot bind his principal beyond the limits of the authority conferred, has been modified in the case of common carriers when dealing with agents in matters relating to transportation.

The right of the common carrier to recover a reasonable compensation for transportation will not ordinarily be limited or abated by secret instructions from the principal to his agent not to pay more than a certain rate for such transportation.

George H. Chamberlain, whose business, in part, it was to ship lumber for others, made an agreement through the agency of one McGraw by which a transportation company agreed to transport lumber from Ontonagon to Sandusky at the rate of two dollars and fifty cents per thousand feet. Chamberlain, finding he could not sell his lumber at Sandusky, telegraphed the Robinson Bros. Lumber Company of Tonawanda asking whether he could ship one boat load for them. They replied that he might if the rate did not exceed two dollars and fifty cents per thousand feet. While the lumber was being loaded Chamberlain directed the master of the boat to proceed to Tonawanda. The transportation company, which knew nothing of this change until after the vessel had sailed, brought an action against the Robinson Bros. Lumber Company to recover the freight earned in carrying the lumber from Ontonagon to Tonawanda.

Upon an appeal by the plaintiff from a judgment in favor of the defendant, entered by direction of the court,

*Held,* that the court erred in holding that Chamberlain was a special agent for the defendant and could not bind the defendant to pay more than the rate of two dollars and fifty cents per thousand feet.

APPEAL by the plaintiff, Edward Smith, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Erie on the 2d day of March, 1895, upon the verdict of a jury rendered by direction of the court after a trial at the Erie Circuit, and also from an order entered in said clerk's office on the 13th day of February, 1895, denying his motion for a new trial made upon the minutes.

*George Clinton,* for the appellant.

*Spencer Clinton,* for the respondent.

LEWIS, J. :

This action was brought by the plaintiff as assignee of a claim for transporting a cargo of lumber from Ontonagon, Mich., to Tonawanda, N. Y. It was alleged in the complaint that the assignor, the Davidson Transportation Company of Hampton, Mich., was the owner of the schooner *Harold* and other vessels, and was engaged in the business of transporting lumber and other property between different ports and places upon the great lakes for hire; that the company received on board the *Harold* a cargo of lumber owned and shipped by the defendant from Ontonagon to Tonawanda aforesaid; that the company carried and delivered said lumber at defendant's request and upon its promise and agreement to pay therefor as freight the reasonable value of the services; that the reasonable value thereof was the sum of $2,834.11, being at the rate of $3.50 per thousand feet, and that the freight for the transportation of said lumber was demanded of the defendant; that no part thereof had been paid except the sum of $2,024.37, leaving due the sum of $809.74. The assignment of the claim to the plaintiff was alleged. The answer admitted the ownership of the lumber and its carriage, but put in issue the question of the reasonable value of the transportation and denied that the lumber was carried at the defendant's request, and alleged that the *Harold* was chartered by one McGraw, and that the lumber was carried under an agreement made by one George H. Chamberlain, acting for the defendant; that said lumber should be so carried for the sum of two dollars and fifty cents per thousand feet, and was so carried under said agreement and not otherwise, and that the defendant had paid the freight and the whole thereof for the carriage of said lumber.

At the close of the evidence a verdict was directed for the defendant and a motion made by the plaintiff for a new trial upon the minutes was denied.

There was evidence upon the trial tending to show that one McGraw was a manufacturer and dealer in lumber at Ontonagon aforesaid; that he was not a shipper of lumber, but sold his lumber on the dock at Ontonagon to be delivered by him upon the rail of vessels there, and that the purchasers of lumber chartered their own vessels. A Mr. Chamberlain was engaged in and about Ontonagon in the business of purchasing lumber for third persons and securing

vessels to transport the same from the place where it was purchased to the place of destination; that in October, 1891, McGraw had a quantity of lumber which he wished to dispose of. He inquired of Chamberlain, at Bay City, if he intended to ship more lumber from Ontonagon that fall. Chamberlain replied that he did, but was not able to obtain boats; McGraw undertook to find boats, and to that end interviewed one James E. Davidson, who was an officer and agent for the Davidson Transportation Company. McGraw understood that Chamberlain desired to ship the lumber to Sandusky, and Davidson offered to furnish two boats for Sandusky at two dollars and fifty cents a thousand feet, and McGraw so informed Chamberlain, who stated that he would engage the boats at that rate, and McGraw informed Davidson, who accepted the rate of freight.

Chamberlain, finding that he could not make a sale of lumber to dealers in Sandusky, telegraphed to the defendant at Tonawanda as follows: "McGraw has two boats chartered for Ontonagon, load one for Buffalo. Can I load one for you with five quarter. Answer." The defendant replied: "Yes, if freight is not over two-fifty and boat is good."

Lumber was at this time being loaded, as the carrier understood, for Sandusky. After the receipt of defendant's telegram and while the lumber was being loaded, Chamberlain directed the master of the vessel to take the cargo of lumber to the defendant at Tonawanda.

The transportation company knew nothing of this change of destination until after the vessel had sailed and was on its way to Tonawanda. The master signed no bill of lading. When McGraw learned of Chamberlain's intention to send the lumber to Tonawanda instead of Sandusky, he told him that the freight would probably be from fifty cents to a dollar a thousand more than the rate agreed upon for Sandusky.

Chamberlain replied that they could fix that down there, meaning the place where the consignee resided. Some of these facts were controverted by the defendant, but as the verdict was directed by the court, they are assumed to be the facts for the purposes of this appeal. The assignment of the claim to the plaintiff was proven. The court held that Chamberlain was a special agent of the defend-

ant and could not bind it to pay any greater rate than the two dollars and fifty cents mentioned in the telegram of instructions.

The question is, whether the carrier was bound by the secret instructions given to the agent as to the rate to be charged or can it recover a reasonable compensation for transporting the lumber? The transportation of the lumber from Ontonagon to Tonawanda was worth from $800 to $1,000 more than the freight would amount to at two dollars and fifty cents a thousand. Chamberlain's business was obtaining customers for lumber and acting for them in procuring boats to ship it after consulting the customer as to the destination of the lumber and the time it should be shipped. The carrier found Chamberlain in control of this lumber and its apparent owner. It contracted with him in ignorance of the fact that he was not its owner, and in ignorance of any special instructions to him. It was not made to appear by any direct evidence whether Chamberlain had theretofore procured cargoes of lumber for the defendant. The tenor of his telegram to the defendant would lead to the inference that he had done so, for, without any explanation, he asks the defendant if he can load a boat for it. He did not even mention what the proposed cargo was to be ; neither the price, quantity nor quality is mentioned. The inference is reasonable that Chamberlain had theretofore dealt with the defendant in purchasing lumber, and that the defendant knew the manner in which he did his business.

While we recognize the general doctrine that special agents with special instructions cannot bind their principals beyond the limits of the authority conferred, the rule, we think, has been somewhat modified in its application to common carriers when dealing with agents in matters relating to transportation. To attempt to apply this rule of special instructions in its fullest extent to contracts for freight made by agents with common carriers when goods are presented to them for transportation, and require them at their peril to examine into the authority of the person presenting goods for transportation to make contracts in relation thereto, would virtually destroy the utility of the business of common carriers. (*Meyer* v. *Harnden's Expr. Co.,* 24 How. Pr. 290.)

The defendant here had clothed Chamberlain with the apparent title to the lumber. The assignor contracted with him in entire ignorance of the secret instructions, and the defendant now seeks to

limit the plaintiff's compensation by instructions it gave its agent which were not communicated to the carrier.

Men engaged in the business that Chamberlain was may be found in large numbers in the country, especially in the ocean and lake ports and about railroad freight depots.

They discharge important duties relating to commerce; not unfrequently carriers, so far as agreements relating to freight are concerned, know no one but these middlemen. The place where the contract for freight is made is not unfrequently a long distance from the place of the owner's business, and to require the carrier to communicate with the owner before accepting the property for transportation would be impracticable. While the general principles applicable to special agencies can be derived from the text books and from adjudged cases, yet after all, each case must, to a large extent, depend upon its own circumstances and be construed with reference thereto.

Reference to a few authorities may be made with profit. They may aid in the solution of the question under consideration. It is held in *Shelton* v. *Merchants' Dis. Trans. Co.* (59 N. Y. 258) that " an agent employed to ship goods to the owner has authority to make such contract with the common carrier as, in the honest exercise of his discretion, he sees fit." Parsons in his work on Shipping and Admiralty (Vol. 1, p. 170) says : " A ship, as the great instrument of commerce, may be regarded as of great importance, not only to its immediate owner, but to the community. And the public policy or general expediency of promoting and assisting the profitable use and employment of the ship in the commercial interchange of commodities between distant nations has a considerable effect upon the law of shipping. It is probable that the system of liens hereafter spoken of and many of the duties and rights of the owner and master of the ship on the one hand and of the shippers of goods on the other, if they do not arise from this policy, are, nevertheless, affected by it and owe to it whatever modifications cause them to differ from what they would be under the ordinary rules of the law of contracts."

In *Nelson* v. *The Hudson R. R. R. Co.* (48 N. Y. 498) it is held that " an authority to deliver goods to a common carrier for transportation includes all the necessary and usual means of carry-

ing it into effect. It can only be executed by obtaining the consent of the carrier to receive them, and the agent is, therefore, authorized to stipulate for the terms of transportation."

In *Ryan* v. *M., K. & T. Ry. Co* (65 Tex. 15) it is stated that " as a general rule the consignor, as the agent to whom the owner entrusts his goods to be delivered to the carrier, must be regarded as having authority to stipulate for the terms of transportation."

In *Howell* v. *Graff* (25 Neb. 130) it is held: " A special agent who acts within his apparent power will bind his principal by his contracts even if he has received private instructions which limit his special authority, but if he exceed his apparent power his principal will not be bound." (*The Millers' Nat. Ins. Co.* v. *Kinneard*, 136 Ill. 199.)

It was held in *Mo. Pac. Ry. Co.* v. *Ins. Co.* (84 Tex. 149) that an agent who bought and shipped cotton to his non-resident principal was presumed to have authority to make any kind of lawful freight contract upon such shipment, as that the carrier should have the benefit of any insurance that might have been effected upon the goods; that in the absence of notice to the contrary the carrier might rely upon the existence of such power in the agent.

Mr. Justice FIELD in *York Co.* v. *Illinois Cent. R. R. Co.* (3 Wall. 107) says that the consignees, who were not in that case the owners of the property shipped, but the mere agents of the consignees, were to be treated as the owners.

If we may assume, as suggested, that the defendant was advised of the character of the business Chamberlain was pursuing, and had theretofore purchased cargoes of lumber through him, Chamberlain may be considered as the general agent for the transaction of that particular kind of business, and if so his acts, as between his principal and strangers in that particular line of business, bound his principal although he violated private instructions given him by his principal which he failed to communicate to the transportation company. (*Cox* v. *Alb. Brewing Co.*, 56 Hun, 491.)

When the Davidson Transportation Company accepted this freight for transportation reciprocal rights arose between it and the defendant, the owner of the property. Shippers of goods are bound to pay the owner of the ship the freight earned by the carriage. The ship owner has a lien on the goods to enforce his rights against them.

This rule is one favored by the law merchant for the mutual benefit of the carrier and the shipper, and for the general advantage of commerce. A charter party does not divest the owner of the vessel of his lien for freight, nor of his right to collect the same. Though the lien be waived by the master delivering the goods without demanding freight, the owner may afterwards compel the consignee to pay it. When the lumber in this case was put on board the vessel it became bound to the ship for the freight. Had these secret instructions to Chamberlain been to the effect that the defendant would consent to his shipping the lumber upon condition that the vessel should not have a lien for its transportation, and the cargo had been taken aboard the vessel without the secret instructions having been communicated to the carrier, it would scarcely be claimed that the vessel would have lost its lien upon the lumber for its transportation. We are of the opinion that there were questions of fact in this case which should have been submitted to the jury, and that it was error to direct a verdict.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event.

BRADLEY, J., concurred; WARD, J., dissented; DWIGHT, P. J., not sitting.

Judgment and order reversed, new trial granted, costs to abide the event.