J. F. H. HARMON et al. *vs.* R. B. W. FLEMING.

The title which a hirer and a purchaser of a slave acquires, is a legal title differing in the duration of the estate, but the rights and obligations acquired and assumed must be regulated by the same rules in each instance.

The common law rule is, that where a duty is imposed on a party, the performance shall be excused, if it be rendered impossible by the act of God; but where by his own contract a party engages to do an act, it is deemed to be his own folly and fault that he does not expressly provide against such contingencies, and exempt himself in certain events. In the instance of an absolute and general contract, the performance is not excused by an inevitable accident, or other contingency.

Where a contract is made for the hire of a slave, and the hirer does not stipulate for an abatement of price, in the event of the death of the slave, the hirer has no legal right to demand an abatement in the absence of such a contract.

IN error from the circuit court of Attala county; Hon. Robert C. Perry, judge.

This was an action of debt, instituted in the circuit court of Attala county by defendant in error against plaintiffs in error, founded on two notes under seal. The defendants filed a special plea, in which they set up in substance, that the notes sued on were given for the hire of two slaves belonging to the plaintiff, for one year, and that the slaves thus hired died during the year; and that upon the maturity of the notes thus given, the plaintiffs in error paid the full amount of the notes, after deducting the loss of time occasioned by the death of the slaves.

The defendant in error demurred to the plea, and the court sustained the demurrer; from which decision of the court, the said plaintiffs in error prayed a writ of error to this court.

*Campbell* and *Niles*, for appellant.

The only point to be determined by this court is, whether a person hiring a negro for a year, and giving his note at the time of the hiring, for the hire, is bound, in case of the negro's death before the end of the year, to pay the full amount promised in the face of the note; or whether he is entitled to a deduction

proportioned to that part of the year remaining unexpired at the time of the negro's death.

The plaintiffs in error have paid for the time the negroes lived; the defendant insists that they are bound for the whole year, as well for the part after, as that before, the death of the negroes.

The actual consideration of the plaintiffs' several promises, was the service of the negroes for the year stipulated. By the death of the negroes, the consideration has in part failed.

Had the defendant in error retained the negroes in his own possession, he could have derived no profit from them after their death. But he is holding plaintiffs accountable as for services rendered after their death, for services the slaves never did nor could render.

"*Actus Dei nemini facit injuriam.*" The act of God shall work an injury to no one, is regarded as a salutary maxim in law. As it is not pretended that the death of the negroes is, in any way, chargeable to the plaintiffs in error, it is to be regarded as the "act of God." It would seem to be a case of extreme hardship for the plaintiffs to be made, under a rule of law, to suffer, and for defendant to be profited at their expense, by an act of God. No such advantage could have accrued to him had the slaves died in his own possession. On their death they would have ceased to be to him a source of profit.

In the case of *Bacot* v. *Parnell*, 2 Bailey (S. C.) 424, this point is expressly decided. It is there held, that "where a slave hired by the year, dies within the year, his wages must be apportioned." The court assimilate this case to that of an overseer, whose wages they had previously decided could be apportioned. Now this court has adopted the South Carolina doctrine in relation to overseer's wages. 6 S. & M. 634. In that case the court refer to *Byrd* v. *Boyd*, 4 McCord, 246, the very case on which the court in *Bacot* v. *Parnell* rely to sustain their decision of this question. It is believed that this court, having followed the case of *Byrd* v. *Boyd*, has clearly indicated a determination to relax the rigor of the English rule, and adopt one more liberal and promotive of justice. This case is a novel one in this court; and as a rule is now to be established, it is be-

lieved that this court will settle the doctrine in such a way as to advance justice, and work as little hardship as possible. The English rule bears hard in many cases; while it is thought no injury could accrue to either party from an adoption of the doctrine laid down in the courts. of South Carolina. *George* v. *Eliott,* 2 Hen. & Mun. 5.

*W. P. Hill,* for appellees.

This question must be decided either by authority or reason; and, so far as the authorities go, although there is some conflict among them, the weight of authority goes to show that the defence is not available. The English authorities all sustain the entirety of such contracts, or similar contracts. In two of the slave-holding States, the doctrine contended for by plaintiff in error seems to be sustained.

The case cited from 2 Hen. and Mun. 5, (*George* v. *Eliott,*) was a chancery case, and it may well be doubted whether the defence could be made on the common law side of the courts of even that State.

South Carolina has adopted the Virginia rule on the subject, and her courts authorize an abatement of the hire; but it may be well to remark, that the civil law doctrine of implied warranties prevails there, and has made the decisions of her tribunals, in. many matters of contract, essentially variant from that of those that have not adopted that doctrine of the civil law.

But, conceding that these are the unimpeached decisions of two respectable sister States, other States whose tribunals are entitled to equal respect, have adopted a different rule.

The case of *Redding* v. *Hall,* 1 Bibb, (Ky.) R. 536, decides, that the hirer of a slave is entitled to no abatement in case of the sickness of the slaves, and they assimilate it to the renting of houses that have become untenantable or deteriorated by unavoidable accident, in which case the tenant is entitled to no abatement.

Afterwards the same court (Kentucky,) held that the tenant or hirer is entitled to no abatement in case of the death of the slave during the year. *Harrison* v. *Murrell,* 5 Mon. 359.

The supreme court of Alabama have by a series of adjudi-

12*

cations maintained the same doctrine. *Perry* v. *Hewlett et al.*, 5 Port. 218, goes very far in maintaining the entirety of the contract of hiring. In that case the defendant had hired two slaves, and included the hire for both slaves in the same covenant; one of the slaves died during the year, and the other afterwards returned to the service of the owner, without the consent of the tenant or hirer.

And the court says, that though the hirer would ordinarily have been compelled to pay for the whole hire of the slave that died, without any abatement, yet as the contract for the hire of both slaves was an entire contract, by the return of the surviving slave to the owner and the retention of the slave by the owner, without the consent of the tenant, he was released from the payment of any portion of the money.

In *Ricks, Adm'r,* v. *Dillahunty,* 8 Porter, 133, one of the negroes hired took sick a few days after the contract of hiring, and died within a few weeks, yet the court held that no abatement should be allowed. They say " the hirer of a slave for a definite period, becomes his purchaser for the time agreed on ; and if he dies before its expiration, the loss of service must be borne by the hirer, who, if sued on his undertaking to the owner, cannot resist a recovery by showing that the act of God prevented him from deriving a profit from his contract, unless by its terms it provides for such a contingency."

In *Smoot* v. *Fitzhugh,* 9 Porter, 72, it is held, that the purchaser and hirer of a slave acquire titles differing only in degree; and hence it follows, the hirer is a purchaser of a term ; and whatever losses may befall the property during the term, are the losses of the purchaser of such term, that is, the hirer.

The decision in our own State in reference to overseers in 6 S. & M. 634, may be admitted as the law in reference to contracts with overseers, and still not the law in reference to slaves. From the peculiar relation between employer and overseer, it is right, perhaps, that much latitude should be allowed each party in allowing them to abandon the contract; but the same reason does not apply to the case of a slave dying during the term for which he was hired. And, with all due deference to the South Carolina courts, we cannot see how they arrive

Harmon et al. *v.* Fleming.

at the conclusion, that the case of *Byrd* v. *Boyd*, 4 McCord, 246, in reference to overseer's contracts, was decisive of the subsequent case of *Bacot* v. *Parnell*, 2 Bailey, 424. It would be difficult to show the similitude even, least of all the identity, of the principles governing the two cases. The case of *Byrd* v. *Boyd*, 4 McCord, 246, only decides that a contract may be apportioned, and our court have only said, in 6 S. & M. 634, that a contract may be apportioned in certain circumstances; but this court is now asked to go a step further and establish a general rule that all contracts for the hire of slaves must be apportioned on the happening of a certain contingency, the death of the slave. Such a doctrine is contrary to the general current of English authorities on the entirety of contract; and the American decisions, except the case from South Carolina and Virginia, sustain the same view, and it is believed that this court will not extend the doctrine in 6 S. & M. 634, further than it is already laid down in that case.

Again, if the court should regard the authorities as somewhat equally balanced, and should feel free to adopt either doctrine, in that event, considerations of policy would dictate that the hirer should be held responsible for the whole hire, notwithstanding the death of the slave, for then the hirer is directly interested in bestowing every care and attention upon hired servants; but if he be not thus responsible, this salutary check of self-interest is removed, a consideration entitled to much consideration at the hands of the court.

Mr. Justice YERGER delivered the opinion of the court.

The record in this case presents a single point for consideration. It is not entirely free from difficulty, and is of considerable importance. It is this: Where a slave is hired for a specific time, at a fixed price, and dies before the expiration of the time; can the owner recover the whole price from the hirer, or only a *pro tanto* price for the period the slave lived? The decisions of the American courts upon this point have not been uniform; and, should we attempt to decide it by precedents derived from them, it would be extremely difficult to reach a satisfactory conclusion.

In Virginia, in the case of *George* v. *Eliott*, 2 Hen. & Mun. 6, the court held, that the general owner, and not the hirer, if the slave died without any default in the hirer, should lose the hire from his death, unless otherwise agreed upon.

In South Carolina, in the case of *Bacot* v. *Parnell*, 2 Bailey, R. 424, a similar rule was laid down.

So also in the State of Missouri, it is held that the general owner, and not the hirer, must lose the hire from the death. *Dudgeon* v. *Tenas*, 9 Mis. R. 867.

While such have been the decisions in the above named States, the courts in several other States have arrived at a totally different result. In Alabama, in the case of *Ricks's Admr's* v. *Dillahunty*, 8 Port. R. 134, the court, after a very elaborate examination, announced their opinion in the following language: " The hirer of a slave for a definite period becomes his purchaser for the time agreed on ; and if he dies before its expiration, the loss of service must be borne by the hirer, who, if sued on his undertaking to the owner, cannot resist a recovery by showing that the act of God prevented him from deriving a profit from his contract, unless by its terms it provides for such a contingency." In the State of North Carolina, a like rule has been established on this subject. *Williams* v. *Halcombe*, 1 Carolina L. R. 365. And in Kentucky, that very sound lawyer, Judge Owsley, delivering the opinion of the court, declared, " that as the uncertainty of the negro's life was equally known to both the general owner and the hirer when the contract for hire was entered into between them, it was not unjust in the owner to exact the full hire of the negro. With that knowledge, it was competent for them to contract in the way most acceptable to themselves ; and when fairly made, the court possesses no power to alter or change the import of the contract." 5 Mon. R. 359 ; 1 Bibb, R. 536. In Tennessee, the rule has been established in the same way. 3 Hayw. 224 ; 9 Yerger, R. 45.

While such have been the conflicting adjudications of these different States upon this question, it is worthy of remark, that the courts in those States which have discharged the hirer from payment of hire after the death of the slave, have nevertheless

Harmon et al. *v.* Fleming.

declared, that he is compelled to pay for the time that the slave hired by him is sick, and also for medical attendance and physicians' bills during the same 'period. See *George* v. *Eliott*, 2 Hen. & Mun. 6 ; and *Wells .v. Kennedy*, 4 McCord, R. 122. In the last named case, the court declare that the general owner is not liable for the doctor's bill, either by the rules of law or the policy of the country, and the hirer has no more right to throw the expenses of the negro's sickness upon the general owner, than to demand an abatement of the price of hire during the sickness.

To our minds, the decisions in Virginia and South Carolina on these two analogous questions seem irreconcilable. We think it difficult, if not impossible, to draw any distinction in principle between the right of a hirer to demand an abatement in price for the loss of the slave's services occasioned by death, and his right to demand a like abatement for the loss of services occasioned by sickness.

It will thus be seen, that if we attempt to base our opinion upon the precedents afforded by the American courts, we would be left in a state of extreme doubt and uncertainty as to the true rule to be established. Whatever rule may be established, will bear hardly upon one or other of the parties to this suit. Both are innocent; and if there were any way of extricating all from loss, it would be gratifying to the court. But as this cannot be, " we must," in the language of Lord Kenyon, " in such a situation, explore our way as well as we can; but we must determine according to the principles of law."

By the terms of this contract, the defendants undertook to pay the plaintiffs a certain sum of money. The consideration of that contract was the hire of certain slaves to the defendant for a specific time. The slaves were hired for the time, and delivered to the defendant. The plaintiff, then, has performed that portion of the contract which he was bound by law to perform ; and on his delivery of the slaves to the defendant for the time fixed, the defendant received the consideration stipulated for by the contract, and became liable for the price agreed upon.

Was there any contract or agreement on the part of the

plaintiff to warrant the slave's life during the period of his hire? If it exist at all, it must be by legal implication, as there is no express warranty. On this point it may be remarked, that no principle of the common law is more clearly established than this, to wit: on the sale of a chattel, the law does not raise a warranty of soundness by implication; on the contrary, if the chattel prove unsound, the purchaser has to sustain the loss, in the absence of an express warranty, or of fraudulent concealment or misrepresentation of the facts. This rule, so applied to the sale of chattels, we think equally applicable to a case of hiring. The title which a hirer and a purchaser of a slave acquires, is a legal title, differing only in the duration of the estate; and the rights and obligations acquired and assumed must be regulated by the same rules in each instance. 9 Port. Ala. R. 72.

It is said, if the slave die before the expiration of the term for which he is hired, the hirer ought not to be compelled to pay, because it is a maxim of the common law, that the act of God works injury to no one. We recognize the full force of this maxim; and in coming to the conclusion we have, to wit, to enforce the contract as made by the parties, we give full force and operation to the maxim. To declare that the defendant should be relieved of the hire on account of the death of the slave, in the absence of an agreement to that effect, would violate the maxim, by throwing upon the plaintiff damages resulting from a loss not occasioned by any default upon his part, and which he had not agreed to sustain. Under such circumstances, we think the law should stand indifferent between the parties, and enforce the contract in the terms made by them. We find the common law rule, on this subject, stated in the following manner: "Where the law casts a duty on a party, the performance shall be excused, if it be rendered impossible by the act of God. But where a party, by his own contract, engages to do an act, it is deemed to be his own fault and folly, that he did not thereby expressly provide against contingencies, and exempt himself from liability in certain events; and in such case, therefore, that is, in the instance of an absolute and general contract, the performance is not ex-

cused by an inevitable accident or other contingency, although not foreseen by, or within the control of the party." Chitty on Cont. 567, and cases cited.

Applying this principle to the case before us, we are compelled to decide against the validity of the plea. When the contract of hire was made, both parties knew that the slave was subject to the casualty of sickness and death, before the expiration of the term for which he was hired; and as the defendant did not stipulate for an abatement of price in the event of his death, we do not think he has any legal right to demand an abatement, in the absence of such a contract.

Since this opinion was prepared, our attention has been called to a case decided in Georgia, in accordance with the views expressed by us. *Sumard* v. *Boynton*, Georgia R., January Term, 1852.

Judgment affirmed.