BROWNE & BRYAN LUMBER Co. *v.* TONEY.

(Division B. March 4, 1940.)

[194 So. 296. No. 34077.]

**Lyle V. Corey,** of Meridian, for appellant.

Jacobson & Snow, of Meridian, for appellee.

Argued orally by **Lyle V. Corey,** for appellant, and by **Gabe Jacobson,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

The appellant, Browne & Bryan Lumber Company, a corporation, brought an action at law to recover from the appellee, J. E. Toney, $400 brokerage commissions for effecting a sale of twenty thousand crossties by Toney to the New York, New Haven & Hartford Railroad Company at Boston, Massachusetts.

To the declaration, the appellee Toney filed a plea of the general issue, and a long special plea, the effect of which was that it became impossible for Toney to comply with his contract to ship the ties by water transportation; and that, under this condition, no commissions ever became due the appellant as a broker.

The case was submitted to a jury which returned a verdict in favor of Toney, and the Browne and Bryan Lumber Company appeals here.

On this appeal, the New York, New Haven and Hartford Railroad Company will be denominated the railroad; the Browne & Bryan Lumber Company will be denominated the broker; and Toney, who traded as the Shubuta Tie & Timber Company (not incorporated) will be spoken of as Toney.

We think the court below erred in not granting the peremptory instruction requested by the broker, the appellant here.

In the beginning, we will say that we shall ignore the pleadings for the reason that the case was developed by the evidence, and on that, we think the broker was entitled to his commissions for effecting the contract between the railroad and Toney.

Sometime in September, 1936, the railroad submitted to the broker a written offer to purchase twenty thousand sap pine ties. This written offer of the railroad was, by the broker, submitted to Toney. Negotiations were had between Toney, the broker, and the railroad, the main feature of which resulted in the railroad agreeing to pay three cents per tie more than was in the

original written offer; and, after these negotiations, on October 12, 1936, Toney wrote the railroad the following letter:

"October 12, 1936.

"Mr. C. R. Painter, Purchasing Agent,

"New York, New Haven & Hartford R. R. Co.,

"New Haven, Conn.

"Dear Sir:

"We acknowledge receipt of your order No. 62—36 for 20,000 dense Southern Yellow Pine cross ties.

"We will do our very best to complete this order as quickly as possible. Cross tie production is lower in the Southern States now than I have ever seen it on account of so much highway building, government work and the farmers crops being good. I really think we cross tie people are going to have a harder time filling orders this season than ever before.

"Thanking you for this business, we are,

"Yours very truly,

"Shubuta Tie & Timber Co.

"J. E. Toney."

The contract in question is lengthy, and we call attention to what we conceive to be the pertinent parts thereof. Omitting details, the railroad identified the contract as Order No. 62—36, and it was addressed to C. R. Painter, the purchasing agent of the railroad. The prices and description of ties were set forth therein. It also provided that the ties were to be shipped by water, and that delivery was to start within sixty days and be completed within five months, and this language was used: "Ties shall be assembled in consignments of sufficient number to justify sending N. Y. N. H. & H. inspector to shipping port. To arrange inspection notify H. J. Sullivan, at 427 West 20th St., Jacksonville, Florida."

Under the heading "Terms of Purchase" this appeared in the contract: "Do not hold goods to complete order in one consignment, but make shipments as material may be ready, sending a complete set of invoices

on simplified forms to cover each shipment.'' The ties were to be delivered in Boston. The contract was accepted October 12, 1936 (and prior thereto by the brokers with the consent of Toney). It did not contain reservation or condition as to lack of shipping facilities, rates to be paid by Toney, or any other condition which would relieve him of his contract in any way.

On November 17, 1936, Toney wrote the railroad that he hoped to begin shipments within two weeks. The record discloses that Toney purchased ties from others and assembled them on the dock at Mobile, Alabama. About the time he executed the contract, he discovered that a boat line on which he had relied for transportation of ties had ceased to do business, and there remained a line owned by a paper corporation which was used in its business but carried freight for others. He also discovered that their rate would be higher than he anticipated paying, and that they would not carry in excess of fifteen hundred ties per week. At the time he wrote the letter saying he hoped to begin shipments within two weeks, he was aware of these adverse circumstances, and he evidently realized that he would lose money if he fulfilled his contract. However, the broker procured for him a booking for transportation of two thousand ties per week at a rate less than the paper company had made him. He declined to avail himself of the rate and booking, and sometime in February or about the first of March, it appears that he had assembled the ties at Mobile, that they had been inspected, and he could not obtain transportation for the entire lot of twenty thousand ties in one shipment. He then declined to ship the ties in split shipments, sold them to other parties for a sum not exceeding the contract price with the railroad; and in his evidence said that the railroad had never called on him to perform his contract or pay damages. However, in April, the railroad notified him that they would go in the market and buy the ties and hold him responsible for its loss.

This record shows that there was no misunderstanding as to the commission to be paid—two cents per tie by Toney to the broker. Toney testified that in selling ties theretofore it had been the custom for commissions to be due when shipments were made. Browne, the man who represented the broker in this transaction, testified positively that the commissions of the broker were due when the contract was executed—"when the minds of the parties met." All of the letters, and previous dealings, tend to support the broker's contention.

There is nothing to show that the railroad knew anything about, or had anything to do with, Toney's plan for shipment of the ties. However, when the time was about to expire for shipment, they offered to extend his time so that he could make split shipments. Toney declined to make split shipments for the reason, as he said, that sap pine ties would deteriorate in value.

When all the testimony in this case is analyzed, it means that Toney made a contract with the railroad, which he did not fulfill for the reason that it became apparent to him he would incur a loss. It is true that about the first of March he could not obtain a boat to carry the entire shipment at one time, but he was encouraged to make split shipments, and then his contract allowed him so to do. Under all the evidence, it was not impossible for Toney to comply with his contract, and no condition arose beyond his control that he alone did not create. If we assume, however, that it became impossible for him to ship the crossties by water from Mobile, Alabama, to Boston, Massachusetts, that fact did not relieve him from performing his contract. Our quotation in this opinion from the contents of the contract indicates that he is not relieved on that account. This Court said in the case of Piaggio v. Somerville, 119 Miss. 6, 80 So. 342, 344: "when a party by his own contract creates a duty or charge upon himself he is bound to discharge it, although so to do should subsequently become unexpectedly burdensome or even impossible; the answer to

the objection of hardship in all cases such being that it might have been guarded against by a proper stipulation. Paradine v. Jane, Aleyn, 26, 82 Eng. Rep. 897; Jemison v. McDaniel, 25 Miss. 83; Harmon v. Fleming, 25 Miss. 135; Abby v. Billups, 35 Miss. 618, 72 Am. Dec. 143; Mitchell v. Hancock County, 91 Miss. 414, 45 So. 571, 15 L. R. A. (N. S.) 833, 124 Am. St. Rep. 706; Anson on Contracts (2d American Ed.), 424; Harmon on Contracts, 824; 3 Elliott on Contracts, Sec. 1891; 13 C. J. 639; 6 R. C. L. 997; note L. R. A. 1916F, 10.''

In the case of Harmon v. Fleming, supra, this Court said: ''We find the common law rule, on this subject, stated in the following manner: 'Where the law casts a duty on a party, the performance shall be excused, if it be rendered impossible by the act of God. But where a party, by his own contract, engages to do an act, it is deemed to be his own fault and folly, that he did not thereby expressly provide against contingencies, and exempt himself from liability in certain events; and in such case, therefore, that is, in the instance of an absolute and general contract, the performance is not excused by an inevitable accident or other contingency, although not foreseen by, or within the control of the party.' ''

In the case of Piaggio v. Somerville, supra, three exceptions are recognized: 1. A subsequent change in the law, whereby performance becomes unlawful. 2. The destruction; from no fault of either party, of the specified thing, the continued existence of which is essential to the performance of the contract. 3. The death or incapacitating illness of the promisor in a contract which has for its object the rendering of personal services.

There is a suggestion of an argument by the appellee that under the case of Gulf & S. I. R. Company v. Horn, 135 Miss. 804, 100 So. 381, 34 A. L. R. 814, the subject of this contract was destroyed. The facts of this case do not bring it within the facts of that case. The subject of this contract was the ties. They were never destroyed,

but instead of Toney performing his contract after having the railroad inspect the ties, he deemed it to be to his advantage to sell the ties to other parties. In the Horn case, the contract was that Horn was employed as an assistant claim agent for training Kemp, and before the time for the performance of the contract Horn ceased to be the claim agent of the railroad, and the Court held that the subject matter of the contract was gone.

It is idle to say that because Toney deliberately breached his contract with the railroad, which had been procured by the broker, he was thereby relieved from paying the brokerage fees. Men cannot ruthlessly disregard their solemn contracts; and, the most that can be said of Toney's testimony is that his intention was to pay the commission only when the shipment was made. His testimony does not rise to the dignity of establishing anything more than the due date of payment of the commission to the broker, if that. Failure to ship by his own fault does not excuse him from paying commission. This was fully settled in Piaggio v. Somerville, supra, and the authorities there cited.

"All contracts subject to conditions beyond our control" was printed at the top of the letterheads used by Toney in all of the material correspondence. This condition expressed on the letterhead was not plead. In the letter of acceptance, this provision was not referred to, neither was it made a part of the contract. The acceptance was unreserved. In the plea, the written memorandum on the letterhead was not referred to as being any part of the contract made by Toney with the railroad company. After the case was docketed in this Court, counsel for the appellee and appellant agreed that it was a fact that this appeared on the letterhead in all the material correspondence, including the letter of acceptance emanating from Toney's office. It will be observed that this sentence did not appear on the letter quoted in this opinion which was made an exhibit in the record. To set the matter at rest, no condition has been testified to

by Toney or his stenographer that indicated that it was impossible for him to comply with his contract. It was always within his power to have complied with this contract. It may have cost him more money than he anticipated when the contract was made, but even this is to be doubted when the record and all of the correspondence is considered. There is no merit in the contention that the notation on the letterhead had anything to do with or was considered by either party as part of the contract, but in the absence of any pleading in this regard, it is not here worthy of notice.

Considering now the whole case, and in order to finally dispose of it, we are holding that March 1, 1937, was a reasonable time within which shipments could have been made by Toney to the railroad; that he is indebted to the broker in the sum of $400, with 6 per cent interest thereon from March 1, 1937; and judgment will be entered here accordingly for the appellant.

Reversed and judgment here for appellant.