Plaintiff's motion for the convening
of a Three-Judge Court will be denied.

The motions for intervention will be
denied.[7] Plaintiff's motion for a class
action determination will be denied, be-
cause there is not a class representative
before the Court with a claim over
which the Court has jurisdiction.

**DRAVO CORPORATION et al.,
Plaintiffs,**

**v.**

**LITTON SYSTEMS, INC., et al.,
Defendants.**

**Civ. A. No. 72S–166(R).**

United States District Court,
S. D. Mississippi, S. D.

Aug. 8, 1974.

G. Hamp Uzzelle, III, Mobile, Ala., for
plaintiffs.

Woods E. Eastland, Jackson, Miss.,
for defendants.

OPINION OF THE COURT

DAN M. RUSSELL, Jr., Chief Judge.

Dravo Corporation, organized under
the laws of Pennsylvania with its princi-
pal place of business in Pittsburgh, and
Walter C. Ernest, III, Billie Ann Carri-
gan and Mrs. Walter C. Ernest, Jr., part-

---

7. In all probability, these individuals are pro-
tected by the class action determination
made in Mattern v. Weinberger, 377 F.Supp.
906 (E.D.Pa., decided April 30, 1974).

ners doing business as Ernest Construction Company, Mobile, Alabama, filed this diversity action against Litton Systems, Inc., a Maryland corporation with its principal place of business in Los Angeles, California, seeking to recover as damages sums of money expended by plaintiffs in prevention of hurricane damage and for repairs caused by the hurricane to a graving dock constructed by plaintiffs for the defendant at its Ingalls Shipbuilding site at Pascagoula, Mississippi.

This cause was submitted to the Court on the pleadings, a pre-trial order, depositions, exhibits, and briefs for the Court, first, to determine liability, and, second, the amount of damages should plaintiffs be entitled to recover.

Plaintiffs, as joint venturers, executed a contract with defendant on August 28, 1968, to construct a graving dock at an original price of $4,705,000.00. Five change orders, not involved herein, increased the price to $4,800,280.00, all of which was paid to plaintiffs. On the night of August 17, 1969, when the graving dock was largely completed, Hurricane Camille hit the area causing wide spread damage. Plaintiffs alleged that they incurred expenses totaling $123,163.00 in preparing for the hurricane and in making repairs, the repairs costing the sum of $80,885.00. Plaintiffs seek to recover the latter amount, claiming that, under the contract, damages occasioned by an "act of God" should be borne by the defendant.

The parties admit the following facts:

(a) The execution of the contract on August 28, 1968.

(b) The execution of five written change orders subsequent to August 28, 1968.

(c) The occurrence of Hurricane Camille on August 17, 1969, causing damage to the graving dock before its completion.

(d) The hurricane damage was an act of God, without fault or omission on the part of plaintiffs or defendant.

(e) Plaintiffs submitted a claim for the repair of damages caused by the hurricane in the sum of $80,885.00.

(f) The defendant declined to pay this claim.

(g) The defendant has paid plaintiffs the full contract price for the construction of the graving dock.

(h) Articles II, XIX and XXIX of the contract were initially drafted by the defendant and were not modified by plaintiffs in the negotiations leading up to the execution of the contract, although other portions were modified at plaintiffs' request prior to execution.

The issue is simply which party shall bear the loss under the contract.

Plaintiffs concede that under the general rule in Mississippi when a contractor has agreed to construct an entire structure, the contractor bears the risk of loss of the structure being damaged by act of God prior to its completion, citing United States Fidelity & Guaranty Co. v. Parsons, 147 Miss. 335, 112 So. 469. However, if the contract is divisible and severable allowing the contractor to recover for work which he has performed prior to the full completion of the contract, plaintiffs contend that the risk of loss is on the owner and not the contractor, citing Ganong & Chenoweth v. Brown, 88 Miss. 53, 40 So. 556, and Clark v. Till, 177 Miss. 891, 172 So. 133. Here, plaintiffs claim that the contract by its terms is divisible. Defendant claims contrariwise. Plaintiffs also contend that if the Articles quoted below are ambiguous, the contract should be construed in plaintiffs' favor as Litton drafted said articles.

Both parties rely on three portions of the contract which are as follows:

"ARTICLE II

Once a month, except as hereinafter provided, the Engineer shall make an estimate in writing of the total amount and value of the work performed

through the end of the month. On receipt of a properly executed and duly certified invoice from the Contractor which is approved by the Engineer and the Owner's on-site representative, the Owner will make a monthly progress payment to the Contractor within twenty (20) days, an amount, which when added to previous payments to the Contractor, represents ninety (90%) percent of the Engineer's estimate thru the month. The Owner will retain ten (10%) percent of the Engineer's estimate as part security for the fulfillment of this contract by the Contractor. The Owner may cause estimates and payments to be made more frequently than once in each month. No progress estimate or payment need be made when in the judgment of the Engineer, the total value of the work done since the last estimate amounts to less than Five Thousand ($5,000.00) Dollars.

All material and work covered by progress payments made shall thereupon become the sole property of the Owner, but this provision shall not be construed as relieving the Contractor from the sole responsibility for all materials and work upon which payment has been made or the restoration of any work damaged by the Contractor, or as a waiver of the right of the Owner to require the fulfillment of all the terms of the contract or as acceptance of any part of the work before its entire completion and final acceptance.

## ARTICLE XIX

(a) the Contractor hereby assumes entire responsibility and liability for any and all persons, including the Contractor's employees and Owner's and Engineer's officers, agents and employees and for any and all damages to property, including damage to Owner's or Engineer's property caused by or resulting from or arising out of any act or omission on the part of the Contractor, its subcontractor, agents or employees under or in connection with this Contract or the prosecution of the work hereunder and shall indemnify and save harmless the Owner and Engineer, their respective officers, agents and employees, against and from risk of claims, demands or damages by third parties arising or alleged to have arisen out of the performance of this Contract. The Contractor, if requested, shall assume and defend, at its own expense, any such suits brought against the Owner.

## ARTICLE XXIX

Nothing in this contract shall be construed as vesting in the Contractor any right or property in the materials used after they have been attached or affixed to the work or the soil, but all such materials, shall, upon being so attached or affixed, become the property of the Owner."

Defendants also cite Article XXXI which expressly provides that the contract be construed in accordance with the laws of Mississippi.

Three depositions and a number of exhibits which were originally exhibits to the depositions, were offered in evidence. In his deposition, Gerard O. Griffin, manager of hazard control for plaintiff Dravo, stated that he was consulted in connection with the contract to furnish insurance rates for insurance to be carried by Dravo, these rates to be included in the over-all contract price. Included were rates for Workmen's Compensation, public liability, the contractor's performance bond, and a pro-rata amount of Dravo's installation floater insurance premiums, somewhat akin to builder's risk insurance. He stated that the contract did not require Dravo to carry builder's risk insurance for the benefit of itself or for Litton, but that he apportioned a part of the cost of Dravo's floater policy to this job. Otherwise, he had no familiarity with the contract. Following the storm he talked to Thomas L. Manley, plaintiffs' project manager in charge of the construction of the graving dock, who reported generally on the damage, and who told Griffin that one of plaintiffs' sub-contractors on the

job had been in touch with defendant's representatives and formed the impression that Litton would take care of the sub-contractor's losses. As a result of this conversation, Griffin, on August 21, 1969, talked by telephone with John Weschler, insurance manager of Ingalls Shipbuilding. Referring to notes that he had of the call Griffin stated that he discussed plaintiffs' damages, not only to plaintiffs' equipment used on the job, but to the graving dock, and his "impression" was that Weschler said Ingalls' insurance would take care of the repairs to the dock.

Thomas L. Manley's deposition was primarily devoted to identifying the various repairs to the graving dock and costs of same; however, he did say that it was his decision to begin immediate repairs.

In his deposition, Weschler, insurance administrator for the Ingalls shipyard, acknowledged that he received a call from Griffin on August 25, 1969, not on August 21, 1969, as stated by Griffin, and that Griffin stated that it was plaintiffs' opinion that Litton was responsible under the contract and that he, Griffin, wanted to let Weschler know that plaintiffs were going to file a claim. Weschler denied making any commitment to pay the claim, saying that it would not have been his policy to do so before a claim was filed and before he had an opportunity to examine it, particularly where wind or water was involved, and, in any event, where an interpretation of a contract would be involved, he would refer the claim to defendants' legal department, which in this case he subsequently did. He also said he had no authority to bind Litton in any manner contrary to the provisions of the contract. He confirmed that Litton had fire and windstorm coverage with an insurance company but was self-insured for water damages, and that Litton had made no claim on behalf of itself for storm damage to the graving dock.

The depositions are of interest to the Court only for the purpose of finding that plaintiffs filed their first formal claim for the cost of repairs for storm damage on January 7, 1970 which Litton very promptly denied on January 22, 1970, in a letter advising that under the terms of the contract Litton was obligated only to extend the term of the contract for completion. On February 24, 1970, Griffin, on behalf of plaintiffs, again wrote defendant, stating that under Article III (a) of the contract plaintiffs were responsible only for damage to property caused by the negligence of plaintiffs, and that as the hurricane was "an act of God", plaintiffs were not responsible for the damage caused by it. On August 24, 1970, Thomas G. Noel, Griffin's successor at Dravo wrote defendant citing Articles II, XIX, XXVIII, and XXIX of the contract as authority that plaintiffs were only required to restore the graving dock if the damages thereto were caused by plaintiffs. Litton responded on December 7, 1970, again denying the claim by virtue of language in Article II of the contract as follows: "All material and work covered by progress payments made shall thereupon become the sole property of the owner, *but this provision shall not be construed as relieving the contractor from the sole responsibility for all materials and work upon which payment has been made* or the restoration of any work damaged by contractor, or as a waiver of the right of the owner to require the fulfillment of all the terms of the contract or as acceptance of any part of the work before its entire completion and final acceptance." Although only that portion underscored was underscored in the letter, the Court also emphasizes, " . . . or as a waiver of the right of the owner to require the fulfillment of all the terms of the contract or as acceptance of any part of the work before its entire completion and final acceptance."

The parties agree, and the Court finds, that the contract executed by and between plaintiffs and defendant is void of any express language placing on either party the risk of damage occasioned by an act of God. United States Fidelity & Guaranty Co. v. Parsons, supra, 112 So. p. 472, sums up the rule thusly:

"On this question, the general rule is that where a house is destroyed by fire, and the contractor having agreed

to furnish labor and material and construct a completed house for the owner, that he takes the risk of the incompleted house being destroyed by fire, unless he protects himself by expressly contracting that he shall not be held liable for an act of God, or other untoward circumstance, against which he is not willing to be bound.

The common-law rule is that where the duty is imposed on a party for performance, his nonperformance shall be excused if it be rendered by an act of God, but where by his contract the party engages to do an act, it is deemed to be his own folly and fault that he does not expressly provide against such contingencies and exempt himself in certain events. In the instance of an absolute and general contract, the performance is not excused by an inevitable incident or other contingency. Harmon v. Fleming, 25 Miss. 135. Destruction by fire would excuse the nonperformance of a duty created by law, but would not excuse a breach of that duty created by contract. The party must contract against such contingencies, or abide and suffer the loss entailed by failure to so contract as to relieve himself from liability."

Nor is the contract divisible or separable as claimed by plaintiffs. Despite the fact that progress payments were to be made under Article II, and, despite the language in Article XIX whereby the contractor (plaintiffs) assumed responsibility for damages to property caused by the contractor, and despite the language in Article XXIX that nothing in the contract shall be construed as vesting in the contractor any right or property in the materials used after they have been attached or affixed, plaintiffs were never relieved at any time of the obligation to complete the contract for a fixed price, nor relieved from the sole responsibility for all materials and work upon which payment had been made; nor did the progress payments constitute a waiver of the right of defendant to require fulfillment of all the terms of the contract. In this connection, evidence on file indicates that progress payments were made as scheduled and were up-to-date at the time of the storm, the only amounts being withheld being the usual retainage. Plaintiffs do not dispute this.

Nor does the Court find that language in any of those portions of the contract relied on by plaintiffs and by defendant is ambiguous. "Contracts are not rendered ambiguous by the mere fact that the parties do not agree upon their proper construction." See Freeman v. Continental Gin Company, 381 F.2d 459.

By way of summary, the Court finds that the contract between plaintiffs and defendant was not divisible nor ambiguous in such a manner as to relieve plaintiffs from the burden of restoration of the graving dock, nor did plaintiffs protect themselves by the inclusion of language in the contract that would relieve them of assuming the risk of a damaging act of God.

Accordingly, the Court finds that the complaint must be dismissed with prejudice. In view of this ruling, there is no necessity to determine the amount of plaintiff's damages.

An appropriate order may be submitted taxing court costs to the plaintiffs.