# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-01107-SCT

*MICHAEL E. TURNBOUGH AND LAURIE T. DUPUY*

*v.*

*STEERE BROADCASTING CORPORATION, DAVID STEERE, D/B/A STEERE BROADCASTING CORPORATION, ROBERT E. BEACHAM, HOWARD L. SCHROTT, RICHARD G. BERNHARDT, III, AND JOE B. COX AS PERSONAL REPRESENTATIVE AND EXECUTOR OF THE ESTATE OF ROGER L. MACBRIDE, DECEASED*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/20/93 |
| TRIAL JUDGE: | HON. JERRY OWEN TERRY SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | NORMAN L. BRELAND |
| ATTORNEYS FOR APPELLEES: | SCOTT E. ANDRESS |
| | H.R. WILDER |
| | H. SLAYTON DABNEY, JR. |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | REVERSED AND REMANDED - 9/26/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/17/96 |

**BEFORE PRATHER, P.J., BANKS AND SMITH, JJ.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. Here we are called upon to determine whether the trial court erred in directing a verdict in favor of the defendants who assert that a personal guaranty conditioned upon the observance of default procedures in a security agreement, which was never drafted nor executed by the parties, was unenforceable. We conclude that the trial court was in error based on the fact that the language of the personal guaranty is ambiguous as to whether the parties intended that the execution of a security agreement operate as a condition precedent to performance under the personal guaranty. Whether the parties intended that execution of an agreement operate as a condition precedent and the nature of the default procedures contemplated by the parties as a part of such an agreement are fact questions not amenable to summary resolution on this record. We reverse and remand for further proceedings.

### I.

¶2. On or about November 13, 1984, Caravelle Broadcast Group, a partnership consisting of Robert

Beacham, Howard Schrott, and Richmond Bernhardt, III[1] as general partners and Roger MacBride and Norman Schrott as limited partners, purchased the assets, business and licenses of WGUF, Inc. (hereinafter, "WGUF"), a corporation which operated a radio station of the same name in Gulfport, Mississippi. Present at the transaction's closing were Holton Turnbough, the President of WGUF, Alfred R. Koenenn, an attorney retained by Turnbough for purposes of this transaction, Beacham, Howard Schrott, and Tom Gamin, a representative of American Media Brokers, Inc.

¶3. As consideration for this purchase, Caravelle tendered checks totaling $250,571.81, as well as a promissory note in the sum of $300,000 for a total purchase price of $550,571.81. Although Turnbough had initially planned to obtain a security interest in the assets to be sold, Turnbough did not obtain either a mortgage on the real property or a security interest in the radio station's assets. Turnbough did receive a personal guaranty at closing, which purported to have been executed by Robert Beacham and Howard Schrott in their individual capacities, and by Beacham as "attorney in fact" for Richmond Bernhardt and Roger MacBride.

¶4. On or about March 27, 1986, Caravelle sold the radio station to Steere Broadcasting Corporation. As part of this transaction, Steere assumed the indebtedness evidenced by the $300,000 promissory note. Turnbough, however, required that the personal guaranty remain in effect in order to give his consent to Steere's assumption of the indebtedness. Steere subsequently defaulted on the note.

¶5. Michael E. Turnbough and his sister Laurie Dupuy, the sole heirs of the estate of Holton D. Turnbough, brought this action against Steere Broadcasting Corporation, who defaulted on the promissory note, and Robert Beacham, Howard Schrott, Richmond Bernhardt, and Roger MacBride as guarantors. Two major disputes arose during the trial proceedings: (1) whether Robert Beacham was authorized to act as "attorney in fact" for Roger MacBride and (2) whether the personal guaranty contained a valid condition precedent which was not complied with by the decedent, Holton Turnbough.

¶6. At the close of the plaintiff's case-in-chief, MacBride moved for a directed verdict. The trial court sustained the motion and ruled in favor of the defendant. In doing so, the court found that "Roger L. MacBride did, in fact, execute a power of attorney authorizing certain acts to be performed in his behalf by Robert E. Beacham and/or Howard L. Schrott." However, the court held that the personal guaranty signed by the defendants contained a condition precedent which was not complied with by Turnbough.

¶7. The disputed provision within the personal guaranty states:

> Notwithstanding anything above, these guaranties may only be enforced after the default procedures specified in the Security Agreement executed between Maker and Payee on date even herewith have been observed.

There was no security agreement executed by the parties. The trial court held that the guaranty was, therefore, unenforceable. From this judgment, the plaintiffs appeal to this Court for consideration of the following issues:

**A) WHETHER THE TRIAL COURT ERRED IN DIRECTING A VERDICT IN FAVOR OF**

**CARAVELLE, HOLDING THAT THE PERSONAL GUARANTY CONTAINED A CONDITION PRECEDENT WHICH WAS NOT COMPLIED WITH AND**

**B) WHETHER THE DOCTRINE OF EQUITABLE ESTOPPEL PREVENTS THE ENFORCEMENT OF THE CONDITION PRECEDENT.**

## II.

### a.

¶8. When considering a motion for directed verdict, the trial court must view the evidence most favorably to the non-moving party. *Fulton v. Robinson Indus., Inc.*, 664 So. 2d 170, 172 (Miss. 1995); *Turner v. Wilson*, 620 So. 2d 545, 550-51 (Miss. 1993). The granting of such a motion is proper if the non-moving party's evidence is so lacking that reasonable jurors would be unable to reach a verdict in favor of that party. *Fulton,* 664 So. 2d at 172; *Tate v. Southern Jitney Jungle*, 650 So. 2d 1347, 1349-50 (Miss. 1995).

¶9. The appellants assert that the trial court erred in directing a verdict in favor of the appellees in that the disputed provision contained within the Personal Guaranty was not a valid condition precedent because "the event, i.e., compliance with the default procedures of the non-existent security agreement can never occur due to the fact no security agreement was ever executed by the parties." A condition precedent has been defined as a "condition which must be performed before the agreement of the parties shall become a binding contract or . . . a condition which must be fulfilled before the duty to perform an existing contract arises." *Mid-Continent Telephone Corp. v. Home Telephone Co.*, 319 F.Supp. 1176 (N.D. Miss. 1970) (citing 17A C.J.S. Contracts § 338, pp. 318-319; 17 Am. Jur.2d, Contracts, § 321, p. 751; Restatement, Contracts, § 250; 3A Corbin on Contracts, § 628, p. 16). "If a fact or event is a condition precedent to a promisor's duty to render the performance promised, its absence or non-occurrence is a 'defense' in an action brought against him for breach of his promise." *Corrigan Dispatch Co. v. Casa Guzman*, 696 F.2d 359, 363 (5th Cir. 1983) (quoting 3A A. Corbin, Contracts § 632 (1960)).

¶10. In the instant case, the appellees signed a personal guaranty holding themselves unconditionally liable for the indebtedness and all interest due in accordance with the promissory note tendered for the radio station. This personal guaranty, however, stated that it could "only be enforced after the default procedures specified in the Security Agreement executed between . . . [Turnbough and the Caravelle Broadcast Group] have been observed." There was no security agreement executed between the parties; therefore, there were no default procedures to observe.

¶11. It is well-settled that the "words of a contract must be given a reasonable construction, and that courts 'must, if possible, ascertain and give effect to the mutual intention of the parties, so far as that may be done without contravention of legal principles.'" *Hicks v. Bridges*, 580 So. 2d 743, 746 (Miss. 1991) (quoting *Hutton v. Hutton*, 239 Miss. 217, 119 So. 2d 369 (1960)). Where the language of the contract is "less than clear and definite in material part," the courts may rely upon extrinsic aids, including the construction which the parties themselves have given to the document, to ascertain the meaning of the contract's terms. *UHS-Qualicare v. Gulf Coast Community Hosp.*, 525 So. 2d 746, 754 (Miss. 1987) (citing *Barnett v. Getty Oil Co.*, 266 So. 2d 581, 586 (Miss. 1972)).

¶12. In ***Hicks v. Bridges***, Bridges filed suit against Hicks for specific performance of a land sale contract. ***Hicks v. Bridges***, 580 So. 2d at 744. Hicks contended that the trial court erred in specifically enforcing the contract between himself and Bridges because there was no proof that the parties to the contract intended to be bound. ***Id.*** at 746. The evidence relied upon by this Court included Hicks' testimony that he and Bridges discussed the transfer of Hicks' farm; that he took Bridges to the FHA office to inquire what procedures would have to be taken to sell his farm to Bridges; that Hicks and Bridges were told that a contract of sale would be needed; and that shortly after Bridges presented Hicks with such a contract Hicks signed the same. ***Id.*** The court also stated that the contract itself cited a description of the property, the purchase price of one hundred and eighty thousand dollars ($180,000), and provisions whereby Hicks retained a one year option to repurchase a portion of the land tendered. ***Id.*** Based upon this evidence, this Court held that Hicks and Bridges intended to enter into a contract. ***Id.***

¶13. The record in the instant case is unclear as to the intention of the parties with regard to the execution of the security agreement. The trial court implied that Turnbough was the only party to benefit from the execution of a security agreement, thus, it was not the duty of the court to "alter or take care of those who act at their own folly" by placing a duty upon the personal guarantors to insure the execution of the security agreement. Contrary to this assertion, the execution of a security agreement would work to the benefit of both parties.

¶14. Although it may be asserted that such an agreement would have allowed Turnbough to seize certain assets in default of the promissory note, the partners in Caravelle signed a personal guaranty holding its members unconditionally liable for the indebtedness of the radio station. Thus, a security agreement presumably would have benefitted the personal guarantors by requiring Turnbough to seek recovery from Caravelle's assets before asserting claims against them. Thus, it cannot be assumed that Turnbough maintained the sole duty to insure the execution of the security agreement. Moreover, while the security agreement would not be executed by them in their individual capacities, it was the Caravelle partners who would have to execute such an agreement on behalf of the partnership.

¶15. There was little evidence presented as to whether the parties ever intended to have a security agreement executed. When asked about the security agreement, Alfred Koenenn, Turnbough's attorney during closing, testified that Turnbough discussed the execution of a security agreement with Caravelle, but realized that such execution was "impossible." Therefore, "the personal guaranties of the limited partners was accepted rather than any kind of security agreement, either for the personal property or mortgage on the real property which was sold." There was no testimony presented by any of the members of Caravelle. The evidence does not contain any other reference to any security agreement or default procedures within any type of agreement. Therefore, the only indication of the parties' intent is Koenenn's testimony as to what Turnbough may have told him during closing.

¶16. We conclude that Turnbough's claim is not summarily defeated for the failure to have complied with conditions which never came into existence.

### b.

¶17. The appellant's second assignment or error is confusing. It appears to be based on the trial court's limiting of the evidence with regard to Roger MacBride's execution of a power of attorney to

Robert Beacham. In spite of this alleged limitation, the trial court found that Robert Beacham and Howard Schrott were authorized to act as attorneys in fact for Roger MacBride and Richmond Bernhardt.

¶18. Whether Robert Beacham and Howard Schrott were properly authorized to act as attorneys in fact for Roger MacBride and Richmond Bernhardt is a question of fact. Therefore it should be determined by the jury rather than the trial court judge. *See Louisville & Nashville Railroad Company v. Gutierrez*, 208 So. 2d 908 (Miss. 1968); *Pruett v. Five County Farmers Association*, 192 So. 2d 437 (Miss. 1966); *Schumpert v. Watson*, 129 So. 2d 627 (Miss. 1961). To the extent that the trial court's finding in this regard was intended to be other than one made simply for purposes of granting summary judgment on other grounds, it is set aside.

¶19. For the foregoing reasons, the decision of the trial court is reversed and remanded.

**¶20. REVERSED AND REMANDED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., McRAE, ROBERTS AND SMITH, JJ., CONCUR. MILLS, J., CONCURS IN RESULT ONLY. PITTMAN, J., NOT PARTICIPATING.**

1. Bernhardt is referred to as both "Richard" and "Richmond" in the original complaint. It is not possible to discern from the record which name is correct. Throughout this opinion he is referred to as "Richmond" because that is the name printed on the pertinent documents in the record.