Action by the county of Herkimer against the town of Sangerfield to recover expenses for the support of poor persons. Judgment for plaintiff.

George H. Bunce, for plaintiff.

W. H. Weller, for defendant.

WILLIAMS, J. The evidence offered by plaintiff, and objected to by defendant at the trial, is received, and defendant may have an exception. The plaintiff is entitled to recover the item of $61.90 for the support of the family at the Kelley Home from October 29, 1897, to February 9, 1898, under subdivision 12, § 3, of the poor law (chapter 225 of the Laws of 1896, amended by chapter 507 of the Laws of 1897). The evidence shows the family required only temporary assistance, and could be and were provided for at home at less expense than would have been incurred at the county house. The power to do this was given to the county superintendent, and was not confined to the overseer of the poor alone. The objection that plaintiff cannot recover the expenses of supporting the children from February 9, 1898, to March 21, 1898, because such support was furnished at the county house, and not in families, asylums, hospitals, or other appropriate institutions, as required by section 56 of the poor law, is not well taken. The statute was enacted for the protection of the children themselves, and under the peculiar circumstances of this case the letter of the statute could not well be complied with. The support was temporary, to continue for a brief time. The mother and children desired it, and made no objection, and no one interfered in their behalf. The defendant was in no manner injured. The expense incurred was much less than it would have been if the statute could have been and had been literally complied with. The defendant is not in a position to interpose the statute as a bar to the right to recover the expense actually incurred for the support of the children during the brief time they were deprived of the care and support of their father. To have made arrangement for their support as required by the literal reading of the statute would have been a more permanent disposition of the children than was for the good of the family, or the interests of the defendant. The course adopted was a benefit to the defendant, rather than an injury; and no reason is apparent why it should be relieved from bearing the expenses actually incurred. Formal decision will be prepared in accordance with the views here expressed, and agreed upon by counsel and submitted for signature.

Ordered accordingly.

(29 Misc. Rep. 645.)

GRAVES v. MIAMI S. S. CO.

(Supreme Court, Appellate Term. November 29, 1899.)

1. PRINCIPAL AND AGENT—AUTHORITY.

On the question of a soliciting freight agent's authority to bind the company by a time contract as to freight, it was shown that, with authority, he had negotiated a settlement arising out of a previous contract with the same shipper, that the company had recognized the settlement, and paid

the amount stipulated, which was part consideration of the new contract, and for a month carried out the new contract. *Held*, that the shipper was justified in regarding him as a general agent for that branch of the business.

2. SHIPPING CONTRACTS—WAR.

Declaration of war does not dissolve a shipping contract between domestic ports.

3. SAME.

Voluntary disposition of vessels to the government in time of war does not dissolve a shipping contract of the owner.

Appeal from municipal court, borough of Manhattan, First district.

Action by John A. Graves against the Miami Steamship Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before FREEDMAN, P. J., and MacLEAN and LEVENTRITT, JJ.

Wheeler & Cortis (John S. Woodruff and Charles Haight, of counsel), for appellant.

H. H. Childers (A. S. Gilbert and Julius H. Mayer, of counsel), for respondent.

LEVENTRITT, J. This action was brought for the breach of a contract for the shipment of freight. The contract was signed on behalf of the defendant in the individual name of one R. H. Vaughan, its soliciting agent, and was intended to bind the defendant to carry from Galveston to New York all the freight shipped by the plaintiff between March 2, 1898, and September 10, 1898, at a maximum freight rate of 10 cents per 100 pounds. It is recited in the contract that a difference had arisen between the parties with reference to the performance by the defendant of the terms of a former contract between them, and that in settlement the contract here in question had been made, and a money consideration paid. For a period of about one month the defendant accepted and carried all the freight tendered by the plaintiff. Then it notified him that it would discontinue the carriage of freight, and thereafter no freight was transported. The plaintiff was compelled to ship his goods by another line of steamers, at a rate materially in increase of that provided for in the contract with the defendant. He had recovery below for the amount of the difference between the two rates for the unexpired term of the contract. The defendant sought to defeat his recovery on the grounds that Vaughan, who signed the contract in his own name, was not authorized to bind the company to such an agreement, and that the defendant discontinued running its line of vessels on account of the war with Spain. On the question of authority the defendant concedes that Vaughan was its soliciting freight agent, but denies his power to bind it to time contracts. It appears, however, that Vaughan had, on behalf of the defendant, negotiated the settlement arising out of the previous contract; that he had been distinctly authorized to do so; and that the defendant had recognized the settlement, and had paid the amount stipulated which is men-

tioned as part consideration in the new contract. Vaughan was acting under the instructions of the defendant's general agent for south-bound freight, to whom the present contract was duly communicated. For one month the contract was performed by both parties. While Vaughan may, in fact, have been merely a special agent, with restricted powers, yet the circumstances of this case justified the plaintiff in regarding him as the general agent for that particular branch of the business. Cox v. Brewing Co., 56 Hun, 489, 10 N. Y. Supp. 213. Private instructions to Vaughan, not communicated to the plaintiff, and not known to the general public, cannot charge the plaintiff with notice. It would seem to be the usual incident of the powers of one designated to solicit freight to contract for deliveries in the near future. We are of the opinion that the general agent for south-bound freight, to whom Vaughan communicated the contract, and who, according to the testimony, left the settlement of the old and the negotiation of the new contract entirely in Vaughan's charge, was clothed with all the authority the latter exercised. Whether we regard the disputed contract as made by him through Vaughan, or, after execution, ratified by his act, pursuant to which it was in part performed, it would be equally binding upon the defendant. Benesch v. Insurance Co. (Com. Pl.) 11 N. Y. Supp. 714; Smith v. Lumber Co., 88 Hun, 148, 34 N. Y. Supp. 518.

The second defense interposed is equally without merit. The answer alleged that, shortly after the execution of the contract, war was declared between the United States and Spain, and that on account of the danger of loss of its steamers through seizure by the naval forces of Spain the operation of its line was discontinued, and that immediately after war was declared its steamers were purchased or chartered for the navy of the United States government; thus rendering further sailings impossible. The only evidence presented by the defendant on this subject is the statement of one of its agents that, because of "lack of safety for the vessel," sailings were "discontinued on account of the war between Spain and the United States," and that the defendant "disposed of its ships by charter." There is also uncontradicted proof that Vaughan admitted that the defendant had sold one of its steamers to the United States government at a profit of $143,000. The contract of affreightment was not dissolved by the declaration of war, inasmuch as the port of destination was domestic. It is only where hostilities exist between the country to which the vessel belongs and the country for which it is bound that such result ensues. 7 Am. & Eng. Enc. Law (2d Ed.) 284; The Francis, 1 Gall. 445, Fed. Cas. No. 5,032; Brown v. Delano, 12 Mass. 370. Even had international complications rendered transportation more hazardous, the contract would have been unimpaired, and the defendant would have been compelled to submit to the increased peril. Abb. Merch. Ships. (13th Ed.) p. 754. Performance of the contract might have been excused had the United States government, in the exercise of the power of eminent domain, seized the defendant's vessels. There is, however, no intimation to that effect in the record. On

the contrary, it is clear that there was a voluntary disposition. Governmental compulsion might have excused performance; the voluntary act cannot. The judgment should be affirmed.

Judgment affirmed, with costs to respondent. All concur.