PIAGGIO *v.* SOMERVILLE.

[80 South. 342, Division A.]

1. SHIPPING. *Charters. Performance. Submarine danger.*
   The owners of vessels are bound to transport cargoes as provided in their charter party, notwithstanding the risk to their vessels of being sunk by a submarine, or pay damages for their failure so to do, for the rule is that when a party, by his own contract, creates a duty or charge upon himself he is bound to discharge it, although so to do should subsequently become unexpectedly burdensome or even impossible.

2. SAME.
   The answer to the objection of hardship in all such cases being that it might have been guarded against by a proper stipulation.

3. CONTRACTS. *Nonperformance. Excuse. Illegality.*

There are three classes of cases in which a party is excused from the performance of a contract: First—A subsequent change in the law, whereby performance becomes unlawful; Second— The destruction, from no default of either party, of the specific thing, the continued existence of which is essential to the performance of the contract; Third—The death or incapacitating illness of the promissor in a contract which has for its object the rendering by him of personal services.

4. SHIPPING. *Charters. Assignment. Waiver of clearance.*

The assignor of a charter party is entitled to recover from the assignee the consideration of the assignment which was payable on clearance of the vessel, where the assignee made full settlement with the owners of the vessel, though such owners refused to permit the vessel to sail, since in such case, clearance was waived by such settlement.

5. SHIPPING. *Charter. Assignment. Consideration.*

Where the consideration for an assignment of a charter party was "payable on clearance," such clearance was not a condition precedent to the assignors' right to recover the consideration, but was merely the time fixed for payment of a present liability, and where there was no clearance, the assignor was entitled to payment within a reasonable time.

APPEAL from the circuit court of Harrison county.

HON. J. H. NEVILLE, Judge.

Suit by J. W. Somerville against Henry Piaggio. From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*B. E. Eaton,* for appellant.

For a correct understanding of the appellant's view of this case, it is necessary to restate and emphasize the conditions upon which the charter party was assigned by the appellee to the appellant. The particular language of the assignment is the following: "For and in consideration of fifteen hundred dollars, payable in cash to J. S. Somerville on the clearance of this vessel at Mobile, Alabama, under this present charter, etc." For the plaintiff to be entitled to recover under the terms of the assignment, it was essential and imperative that the schooner "Henry S. Little" should have cleared from the port of Mobile under this present charter. The only

excuse for this vessel not clearing which could have been availed of by the appellee as giving him a right to the consideration is that some act of appellant should, in and of itself, have prevented the vessel from clearing under this present charter from Mobile.

In other words, if the vessel was prevented from clearing by a wrongful act of appellant, then the appellee might have treated this wrongful act of appellant as the equivalent of the clearance of the ship under this charter, but if no wrongful act of appellee intervened and prevented the clearance, then the plaintiff has no right of recovery, whatever may have been the reason for the failure of the vessel to clear.

While it is not material in its legal aspect whether the owners of the Henry S. Little were or were not justified in refusing to sail, still it is pertinent to observe that they were justified under at least two separate decisions of the Supreme Court of the United States.

The general principle announced is that a master of a vessel upon the high seas has a right, and it is his duty, to refuse to take any chances which will seriously subject either the vessel or the cargo or the crew to destruction, and if, upon the high seas when such emergency arises, it is his duty to take such course with his vessel as will subject it to the least peril of capture or destruction. The first and leading case is the *Steamship Styria* v. *Morgan,* 46 Lawyers' Ed. 1027. The supreme court of the United States reaffirmed the doctrine of the Styria case in the case of *Kronprinzessin Cecilie,* 61 L. Ed. 960, submitted to and decided by the supreme court after we had entered the war with Germany.

It is unquestionably true that the owners of the Henry S. Little were absolutely within their legal rights in refusing to sail and they were within their legal rights also in maintaining that they were not liable for any damages sustained by the appellant because of the refusal of the vessel to sail. It also follows that the appellee assigned to appellant not an enforcible or valuable

right in any respect, but a nullity and there was therefore no consideration whatever upon which to base a right to recover the stipulated cost of the assignment.

However, apart from this discussion, the appellee had no right of recovery against appellant, even, if under the law, the owners of the vessel had no right to refuse to sail. The consideration stipulated in the assignment was payable solely upon the condition that the vessel would clear from the port of Mobile, under this charter. This the vessel declined to do, and whether rightfully or wrongfully, the loss suffered by the appellant was the same. If the vessel declined to sail, certainly the appellant would have a cause of action against it for its breach of contract and he would have a right to recover such damages as he had sustained. However, neither his right to recover such damages nor the actual recovery thereof would give appellee a right to recover against him the assignment consideration, because this consideration is payable, not upon whether appellant received damages for the failure of the ship to sail, but upon the actual sailing of the vessel under the assigned charter. By the very terms of the article of assignment, appellee assumed whatever risk was incurred in the possible failure of the vessel to sail. Apparently it was anticipated that the vessel might not sail, since otherwise there was no reason for making payment contigent upon the sailing of the vessel from a definite port under a specific charter party. It therefore becomes a condition precedent that the vessel sail under its assigned charter party before ever the consideration becomes payable to appellee and the following authorities illustrated the necessity of all conditions precedent occuring before a recovery may be had. "Performance of conditions precedent to right of action must be strictly proved to entitle plaintiffs to recover. A contract for the purchase of butter between O and M provided that O would keep twenty cows during the ensuing season and would sell the butter from their milk to M at a fixed price

which he agreed to pay. O provided the cows, but towards the close of the season sold five, whose milk failed, and did not supply their places. Held, That M was not bound to take and pay for the butter made. Keeping twenty cows during the season was a condition precedent." *Oakley* v. *Martin,* 62 Am. Dec. 49; *Standard Construction Co.* v. *Broutley Granite* Co., 90 Miss. 16; *Cleary* v. *Morson,* 94 Miss. 278; *Brennan* v. *Brennan,* 185 Mass. 560, 102 Am. St. Rep. 363; *Burdis* v. *Burdis,* (Va.), 70 Am. St. Rep. 825.

There are may citations to and examples of conditions precedent in 12 C. J. 407.

The appellee cannot successfully maintain that the acceptance of seventy-five hundred dollars by appellant is in lieu of and equivalent to the sailing of the vessel under its charter party. This claim cannot be made, first, for the obvious reason that it is not true; and second, because the facts stated in the plea make it impossible successfully to take this position. The assignment itself is not based on any doctrine of equivalents. It is specifically based upon the happening of a certain event—viz., the sailing of a vessel under a certain charter.

The principle of this case is completely illustrated by the following decision of the supreme court of Louisiana:

"The Stipulation: It is hereby agreed that in case the Hamburg, Ruston & Southern Railway is not completed to Farmersville within two years and to Ruston within three years, this contract is null and void," is a condition precedent, and the agreement is null and void if that road is not built within that time. It does not suffice that another road of greater advantage than the one named should be built. It is not a case for the application of the doctrine of equivalents. He had a right to stand upon the precise terms of the agreement. *Union Saw Mill Co.* v. *Lake Lbr. Co.,* 44 So. 1000.

We respectfully submit that a full consideration of the facts of this case under the legal principles will lead to its reversal and an order of dismissal to the court below.

*White & Ford,* for appellee.

We submit the provisions for payment on clearance was simply the time of payment and no contingency of a failure to sail was in the minds of the parties at the time of making the assignment. If it had been, they would have provided against it. But that is immaterial for the reason that appellant is now estopped to raise the question of her failure to sail, having by his own act prevented the sailing. The main and most interesting question in the case is: Was the ''Little'' required to sail? We contend she was.

We ask the court to read the charter party wherein the agreements of the ship appear with reference to the performance of the voyage she later so lightly cast aside. The only excuse given for failure to sail is that the ship-owners contended they did not have to sail. That dosen't offer any excuse. What they thought about it makes no difference, but the question is, what were their legal rights? They had bound themselves to appellee to sail. Appellant had become the owner of the rights of appellee and could require the vessel to do anything that the appellee or his assigns could. The excuse offered for a failure to sail was that the submarine peril had increased. The charter party was entered into and the remuneration of the ship fixed in August, 1916. It is more likely that the freight rate increase in the early part of 1917 was the real reason for a failure to sail on this voyage.

Appellant gives as a defense that he was advised by his counsel that the vessel could not be compelled to sail and was not liable for a refusal. This being bad advice, it logically follows that appellant has since changed attorneys for we cannot admit that the gentleman opposing us here gave the advice.

Bearing in mind that there is nothing in the record to show the vessel would have been sunk or even attacked, or that she would have seen a submarine on the voyage, but that her refusal to sail was based on a possibility

that she might encounter a submarine, we will cite authorities to sustain our contention.

"Where, after the outbreak of the European war, the defendant, a musician, agreed to pay the plaintiff a commission for procuring for her an engagement for performances in Australia, it being provided that should the engagements not be fulfilled owing to default on the part of the defendant other than illness, the commission should be payable as if the engagements had been fulfilled, it was held that the defendant was liable on the contract, notwithstanding her refusal to go to Australia for fear of submarine attacks on the voyage." *Foster's Agency* v. *Romaine* (1916), 32 Times L. R. (Eng.) 331; L. R. A. 1916, F. 34; 19 L. Ed. (U. S.) 629; *Railroad* v. *American Trading Co.*, 49 L. Ed. (U. S.) 269; *White* v. *Railroad*, 19 Mo. App. 400; *United\States* v. *Smoot*, 21 L. Ed. (U. S.) 107; *Jamieson* v. *McDaniel*, 25 Miss. 83; *Harmon* v. *Fleming*, 25 Miss. 135; *Heirn* v. *McCaughan*, 32 Miss. 17.

No rule of law is more firmly established by a long train of decisions than this: That where a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good if he may, notwithstanding any accident by inevitable necessity, because he might have provided against it by his contract . . . to bring the case within the rule of dispensation, it must appear that the thing to be done cannot by any means be accomplished for if it be only improbable or out of the power to the obligor, it is not deemed in law impossible . . . Contingencies should be provided for in the contract. Where one or two innocent parties must sustain a loss the law casts it upon him who agreed to sustain it, or rather leaves it where the agreement of the parties has put it." *Schools* v. *Bennett*, 72 Am. Dec. (N. J.) 373.

"Even an act of God will not excuse a duty created by contract." *Mitchell* v. *Hancock County*, 91 Miss. 414. See also: *Anderson* v. *May*, 17 L. R. A. 555; 3 Elliott on Contract, sec. 1891; 13 C. J. 640-1; *Beig* v. *Erickson*,

L. R. A. 1917A 648; *Runyon* v. *Culver*, L. R. A. 1916F 3.

We respectfully submit that cases cited by appellant do not help him. The Styria case so much relied upon by counsel involved a charter party containing a provision excusing performance on account of "restraint of princes and rulers of peoples," which provision the charter party under consideration in this case did, not contain. In the Kronprinzess Cecilie, cited by counsel, a question of what was best for the cargo, passengers, and all concerned was involved, the captain owing the passengers, cargo and crew a duty, as well as the ship. The cases cited by counsel for appellant are not in point where, as here, the question involved is a letting of the whole ship. We therefore respectfully call the court's attention to the distinction.

For the meaning of the terms—"perils of the Sea," "dangers of navigation" and "restraint of Kings and Princes," see 1 Words & Phrases, page 1201; Vol. 3, page 960 and Vol. 4, page 364.

We respectfully submit that the decree should be affirmed.

Smith, C. J., delivered the opinion of the court.

This is an action in *assumpsit* in which the appellee was the plaintiff and the appellant was the defendant in the court below, and they will be hereinafter so designated.

The declaration in substance alleges that a charter party was entered into between the owners of the American schooner Henry S. Little and the W. A. Powell Transport Company, by the terms of which the vessel was to transport a cargo of lumber from the Gulf of Mexico to a port on the west coast of the United Kingdom, London, Lisbon, or the west coast of Italy; the W. A. Powell Transport Company, or its assigns, having the right to designate the port of loading and of destination; that this charter party was assigned by the W. A. Powell

Transport Company to Hunter Benn & Co., who assign-
ed it to the plaintiff; that on the 27th day of February,
1917, the plaintiff assigned this charter party to the de-
fendant, which assignment and the acceptance thereof by
the defendant are as follows:

"Gulfport, Miss., Feby. 22, 1917.

"For and in consideration of one thousand, five
hundred dollars payable in cash to J. W. Somerville, on
clearance of this vessal at Mobile, Albama, under this
present charter, the within charter party of the Henry
S. Little is hereby transferred to Henry Piaggio, he,
the said Piaggio, agreeing to fulfill all the terms and
conditions of same without recourse on either W. A.
Powell Transport Company, Hunter Benn & Company
or J. W. Somerville.

"Accepted on the above terms.

"[Signed] J. W. SOMERVILLE.
HENRY PIAGGIO."

The declaration further alleges that the owners of the
vessel declined to permit it to sail to any of the ports
designated in the charter party because of the increased
perils of the sea due to the unrestricted submarine war-
fare then being conducted by Germany in disregard of
the rights of neutrals, and in lieu thereof paid to the
defendant the sum of seven thousand, five hundred dol-
lars in full settlement of all claims he might have against
them under the charter party, and prayed for a judgment
against the defendant in the sum of one thousand, five
hundred dollars, together with interest thereon, etc. The
defendant's plea in substance alleges:

That he requested the owners of the vessel to transport,
under the terms of the charter party, a cargo of lumber
to a port in Italy, and that they declined so to do, "giv-
ing as a reason therefor the increased peril of the sea
due to the fact that subsequent to the date of the execu-
tion of said charter party Germany had given notice to
the world that she would on the 1st day of February,
1917, begin a general and unrestricted submarine war-
fare and would destroy all vessels of whatever flag in

the waters adjacent to Great Britain, France, and Italy, which declaration made subject to destruction the schooner aforesaid, which until said time, being an American schooner, was not so imperiled. That defendant when so advised explained to the owners of said schooner that he was obligated to deliver the cargo in Italy, and that his obligation had been made and created after the transfer of the schooner aforesaid by the plaintiff, and that the failure of said schooner to take on said cargo would subject the defendant to a loss of between fifteen thousand and twenty thousand dollars. That thereupon he again demanded the carrying out of the charter party, which the owners thereof refused. Whereupon the owners of said schooner offered to pay to defendant the sum of seven thousand, five hundred dollars, not as a legal obligation upon them to do so, but because of their willingness in the unlooked for situation to bear part of the loss occasioned the defendant by their refusal to take the cargo to its destination. That the defendant was advised by his counsel that the owners of said schooner could not be compelled to take said cargo and were not liable for his damage for their refusal, and that any amount they would offer to contribute towards defendant's loss should be accepted for the reason that defendant otherwise would be without remedy and compelled to bear the entire loss. Whereupon the defendant accepted the said sum of seven thousand, five hundred dollars, not in any manner in lieu of compliance by the owners of said schooner with their charter obligation, but in diminution, as far as it extended, of his losses occasioned by said refusal. That the loss sustained by defendant because of said refusal, over and above the compensation heretofore mentioned, was approximately twelve thousand, five hundred dollars, and that through no fault or act of his the owners of said schooner refused to comply with their charter party and refused to make possible the occurrence of the condition upon which plaintiff's right to recover is predicated."

To this plea the plaintiff replied that He "is not precluded from recovering by reason of anything set up in said plea, because he says that when said sum of seven thousand, five hundred dollars was paid by the owners of said vessel to the said Henry Piaggio, defendant, as set up in said plea, that it was paid with the understanding and agreement between the said Piaggio and the said owners of said vessel that thereafter no right of action based upon said charter party should be enforced or attempted to be enforced by the defendant Piaggio against said vessel, or its owners, and that all matters of controversy between the said vessel and its owners on the one part, and the defendant Piaggio on the other, were thereby closed and terminated; and plaintiff says that said charter party was thereby canceled and annulled."

This replication was demurred to, and, the demurrer beign overruled, the defendant declined to plead further, and judgment was rendered for the plaintiff for the amount sued for.

The contention of the defendant is that the clearance of the schooner Henry S. Little at Mobile under the charter party is a condition precedent to any obligation on his part to pay the plaintiff the money sued for, to which the plaintiff replies that the performance of this condition, if such it is, was waived by the defendant when he accepted the seven thousand, five hundred dollars, from the owners of the vessel, and released them from further liability to him under the charter party, to which defendant rejoins that his acceptance of the money and release of the owners of the vessel from further liability under the charter party cannot be construed to be a waiver of the condition precedent for the reason that he could not have enforced its performance had he tried to do so; the owners of the vessel having been released from the obligation of the charter party because of the danger of being sunk by a German submarine to which the vessel would have been subjected had it attempted to make the voyage.

The charter party contains no such qualification of the obligation. Consequently the owners of the vessel were bound to transport the cargo of lumber as provided therein, notwithstanding the risk to the vessel of being sunk by a submarine, or pay damages for their failure so to do, for the rule is that when a party by his own contract creates a duty or charge upon himself he is bound to discharge it, although so to do should subsequently become unexpectedly burdensome or even impossible; the answer to the objection of hardship in all such cases being that it might have been guarded against by a proper stipulation. *Paradine* v. *Jane,* Aleyn, 26, 82 English Reprint, 897; *Jemison* v. *McDaniel,* 25 Miss. 83; *Harmon* v. *Fleming,* 25 Miss. 135; *Abby* v. *Billups,* 35 Miss. 618, 72 Am. Dec. 143; *Mitchell* v. *Hancock County,* 91 Miss. 414, 45 So. 571, 15 L. R. A. (N. S.) 833, 124 Am. St. Rep. 706; Anson on Contracts (2d American Ed.), 424; Harmon on Contracts, 824; 3 Elliott on Contracts, section 1891; 13 C. J. 639; 6 R. C. L. 997; note L. R. A. 1916F. 10.

There are, however, certain classes of events the occurring of which are said to excuse from performance because "they are not within the contract," for the reason that it cannot reasonably be supposed that either party would have so intended had they contemplated their occurrence when the contract was entered into, so that the promisor cannot be said to have accepted specifically nor promised unconditionally in respect to them. *Baily* v. *De Crespigny,* L. R. 4 Q. B. 185, 15 English Ruling Cases, 799. These three classes are: First, a subsequent change in the law, whereby performance becomes unlawful. *Baily* v. *De Crespigny,* L. R. 4 Q. B. 180, 15 English Ruling Cases, 799; *Heart* v. *Tennessee Brewing Co.,* 121 Tenn. 69, 113 S. W. 364, 19 L. R. A. (N. S.) 964, 130 Am. St. Rep, 753. Second, the destruction, from no default of either party, of the specific thing, the continued existence of which is essential to the performance of the contract. *Taylor* v. *Caldwell,* 3 B. & S. 826, 32 L. J. Q. B.

119 Miss.—2

164, 6 English Ruling Cases, 603; *Dexter* v. *Norton,* 47 N. Y. 62, 7 Am. Rep. 415. And, third, the death or incapacitating illness of the promisor in a contract which has for its object the rendering by him of personal services. *Robinson* v. *Davison,* L. R. 6 Ex. 269; *Smith* v. *Preston,* 170 Ill. 179, 48 N. E. 688.

The case at bar cannot be referred to any of these classes, and, in order for it to be brought within the exception to the rule of absolute liability, it will be necessary for us to add thereto a fourth, class, to wit, a subsequent foreign war or a subsequent change by one or more of the belligerents in the method of waging such a war which renders performance more burdensome to the promisor than when the contract was entered into, but so to do would be without the reason of the exception and contrary to the authorities. 13 C. J. 640; note L. R. A. 1916F, 72; *Ducas Co.* v. *Bayer Co.* (Sup.), 163 N. Y. Supp. 32; *Richard & Co.* v. *Wreschner,* 174 App. Div. 484, 156 N. Y. Supp. 1054, 158 N. Y. Supp. 1129.

There are a few cases which cannot be referred to any of the three foregoing classes, such as *Kinzer Construction Co.* v. *State,* 68 Misc. Rep. 423, 125 N. Y. Supp. 45, and *The Kronprinzess Cecilie,* 244 U. S. 12, 37 Sup. Ct. 490, 61 L. Ed. 960, which last-mentioned case is erroneously supposed by counsel for the defendant to sustain his contention. In that case a German-owned vessel sailed from New York to Bremerhaven via Plymouth, England, and Cherbourg, France, on the eve of the outbreak of the recent war, having on board, among other articles, a number of kegs of gold consigned to Plymouth and Cherbourg. In order to escape capture by the French or English, it turned back before reaching either of the last-named ports and returned the gold to the shippers, who instituted libels against it to recover the damages alleged to have been sustained by them because of its failure to deliver the gold. The probabilities of the vessel's capture, had it continued its voyage to either the French or the English port, were so great that the court held that

it was justified in turning back, and that its owners were thereby excused from performing their contract to transport and deliver the gold, for the reason that the capture of the vessel was a risk "which, if it had been dealt with (when the contract of shipment was made), it cannot be believed that the contractee would have demanded or the contractor would have assumed." No such reason can be assigned here for the exclusion from the contract of the risk which the Henry S. Little would have run by making the voyage to Italy demanded by the defendant when we remember that commerce was not suspended because of Germany's unrestricted submarine warfare; but, on the contrary, vessels owned by citizens of both neutral and belligerent countries sailed continuously in the waters in which that warfare was being waged. *Furness* v. *Muller* (D. C.), 232 Fed. 186; *Graves* v. *Miami S. S. Co.*, 29 Misc. Rep. 645, 61 N. Y. Supp. 115; *Elsey* v. *Stamps*, 10 Lea (Tenn.) 709; *Foster's Agency* v. *Romaine*, 32 T. L. R. 331; *The Harriman*, 9 Wall, 161, 19 L. Ed. 629.

It follows from the foregoing views that the judgment rendered in the lower court is correct, even should it be conceded, which counsel for the plaintiff do not, that the clearance of the Henry S. Little at the port of Mobile under the charter party is a condition precedent to liability on the part of the defendant, that condition, if such it is, having been waived by the release by the defendant of the vessel's obligation to make the voyage; but we are of the opinion that the clearance of the vessel is not a condition precedent to liability, but is simply the time fixed for the payment of the money sued for, and consequently that the failure of the vessel to clear at the port under the charter party, for whatever reason, is immaterial, for the consideration of the defendant's promise to pay was the assignment to him of the charter party so that it constituted a present liability on his part, payment simply being postponed until the clearance of the vessel at Mobile, and, since that event did not happen, payment became due within a reasonable time. *Randall*

v. *Johnson,* 59 Miss. 317, 42 Am. Rep. 365; *Hughes* v. *McEwen,* 112 Miss. 36, 72 So. 848, L. R. A. 1917B, 1048; 13 C. J. 684.

*Affirmed.*