**MERRILL LYNCH, PIERCE, FENNER AND SMITH, INC., Plaintiff-Appellant,**

v.

**B.C. ROGERS AND SONS, INC., Defendant-Appellee.**

No. 82–4324
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1983.

---

1. *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946).

**1114**

Barnett, Alagia & Pyle, William A. Pyle, Nora F. Stone McRae, Jerry L. Mills, Jackson, Miss., for plaintiff-appellant.

Cox & Dunn, Ltd., Vardaman S. Dunn, Jackson, Miss., for defendant-appellee.

Before CLARK, Chief Judge, POLITZ and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This appeal arises out of a diversity action in which plaintiff Merrill Lynch, Pierce, Fenner and Smith, Inc. sought to recover $39,375 under its written contract with defendant B.C. Rogers and Sons, Inc. After a bench trial, the district court denied Merrill Lynch relief, holding that B.C. Rogers' obligation to pay was excused by the nonoccurrence of an event that was central to the contract's purpose. Finding no error in the court's ruling, we affirm.

The events leading to this contract dispute began in late 1979 when B.C. Rogers, a closely held Mississippi corporation engaged in the chicken raising business, found itself in need of a substantial loan. Bennie Rogers, the company's vice-president, began negotiating for a five million dollar loan from a local bank to be partially guaranteed by the Farmers Home Administration. The bank told Rogers that it did not wish to retain the guaranteed portion of the loan. While seeking assistance in placing the guaranteed portion of the loan, Rogers discovered that Merrill Lynch was in the business of either purchasing or placing guaranteed loans.

After negotiations in both Jackson, Mississippi and New York City, Rogers and Merrill Lynch signed a contract on April 21, 1980 obligating Merrill Lynch to act as B.C. Rogers' financial advisor in exchange for a fee. Specifically, the contract required Merrill Lynch to (1) review application material; (2) structure the loan and assist in the preparation of loan documentation; (3) place or purchase the guaranteed portion of the loan at a rate acceptable to Rogers; (4) provide a forward commitment for the purchase of the guaranteed portion of the loan as required; and (5) close the loan. In turn, B.C. Rogers was required to pay to Merrill Lynch .25 percent of the guaranteed portion of the loan upon the FmHA's issuance of a

"conditional commitment to guarantee" and .625 percent of the guaranteed portion of the loan upon closing. Moreover, the contract obligated B.C. Rogers to "work exclusively with Merrill Lynch on this matter."

Although the FmHA initially rejected B.C. Rogers' loan application, it reconsidered its position and issued a conditional commitment to guarantee the loan after a meeting with Rogers, various staff members of Mississippi's congressional delegation, a bank officer, and a Merrill Lynch representative. To the surprise of both Rogers and Merrill Lynch, the first draft of the FmHA's conditional commitment required the lender to retain the guaranteed portion of the loan for one year. Despite its initial reluctance to retain this portion, B.C. Rogers' bank agreed to comply with the FmHA's requirement. In fact, the bank insisted on retaining the entire loan even after the FmHA decided to delete the loan retention requirement from the final draft of its conditional commitment. As a result, Merrill Lynch was unable to purchase or place the guaranteed portion of the loan and B.C. Rogers was obligated to pay a higher rate of interest than otherwise could have been obtained. Nevertheless, the loan was closed on August 22, 1980.

After B.C. Rogers refused payment, Merrill Lynch filed suit in federal court for the $39,375 fee. Following a bench trial, the court denied recovery on the grounds that the contract was subject to an implied condition relieving the parties' duty of performance upon the occurrence of any event rendering the guaranteed portion of the loan unavailable for placement. Merrill Lynch appeals from this ruling.[1]

■ We decide that the district court correctly applied Mississippi law involving the theory of implied conditions.[2] Although Mississippi courts hold that inconvenience or unexpected hardship will not release a party from his contract, *see Browne & Bryan Lumber Co. v. Toney,* 188 Miss. 71, 194 So. 296 (1940), they nonetheless recognize

certain classes of events the occurring of which are said to excuse from performance because "they are not within the contract," for the reason that it cannot reasonably be supposed that either party would have so intended [performance] had they contemplated their occurrence when the contract was entered into. . . .

*Piaggio v. Somerville,* 119 Miss. 6, 80 So. 342, 344 (1919). One of these "classes of events" is the "destruction, from no default of either party, of the specific thing, the continued existence of which is essential to the performance of the contract." *Id.*

■ This principle was illustrated in *Gulf & S.I.R. Co. v. Horn,* 135 Miss. 804, 100 So. 381 (1924) in which the court held that the defendant's duty to perform under a contract was excused by the cessation of an essential condition. The defendant in that case had hired the plaintiff to assist its elderly claim agent. Before the plaintiff began work, however, the claim agent voluntarily retired. Rejecting plaintiff's argument that he was entitled to employment despite the agent's retirement, the court implied a condition that

where the subject-matter of the contract has been destroyed or the event creating the impossibility is one which could not reasonably be supposed to have been within the contemplation of the parties at the time of the contract, the promisor is discharged from the performance of the contract. . . .

*Id.* at 382. *Piaggio* and *Horn* thus teach that a party's duty to perform is excused if: (1) the parties contracted on the basis of the continued existence of a specific state of

---

1. Merrill Lynch does not appeal from the district court's denial of quantum meruit relief.

2. Merrill Lynch argues that it was prejudiced by B.C. Rogers' failure to plead the affirmative defense of implied condition under F.R.C.P. 8(c). This argument is without merit. Rule

8(c) does not expressly require an implied condition to be raised as an affirmative defense. Moreover, Merrill Lynch's failure to object to evidence establishing an implied condition allowed this case to be tried under that theory. *See* F.R.C.P. 15(b).

things or condition that ceases to exist at the time for performance; (2) the promisor was not at fault; and (3) the promisor could not have anticipated the cessation of the crucial condition. *See also* 17 Am.Jur.2d *Contracts* §§ 411, 412 (1964); 17A C.J.S. *Contracts* §§ 463(1)(c), 464 (1963).

■ We find that the trial court's findings of fact are not clearly erroneous. Because these findings satisfy the three elements, we also agree that the implied condition theory governs this case.[3] First, B.C. Rogers demonstrated that the contract's central purpose was the obligation of Merrill Lynch to purchase or place the guaranteed portion of the loan and that the contract rested on the parties' mutual assumption that the guaranteed portion of the loan would be available for purchase or placement. The language of the contract does not state this purpose, but the object of the contract and the circumstances surrounding its execution leave little doubt.[4] Rogers testified that he was more concerned about the bank's willingness to retain such a large loan than he was about the FmHA's approval of it. He thus contracted with Merrill Lynch because of its ability to purchase or place the guaranteed portion of the loan. Michael Dowell, a Merrill Lynch account executive, also testified that Merrill Lynch's function was to locate a purchaser of the loan who could relieve the bank from the burden of retaining the entire amount. We cannot then find to be clearly erroneous the conclusion that the parties contracted on the assumption that the guaranteed portion of the loan would be available for purchase

or placement. It follows that the purpose for the contract ceased to exist when the bank later decided to retain the entire loan.[5]

The evidence also supports the trial court's conclusion that B.C. Rogers was without fault in the bank's decision to retain the guaranteed portion of the loan. Rogers testified that he did not challenge the FmHA's loan retention requirement in the first draft of the conditional commitment because an FmHA official informed him "in no uncertain terms" that the requirement could not be deleted. Rogers also testified that he was notified of the FmHA's decision to remove the requirement only two days before the closing and that the bank already had decided to retain the guaranteed portion of the loan. Rogers questioned this decision, but a bank officer told him that it would not be reconsidered. B.C. Rogers thus had no control over the circumstances leading to the bank's decision to retain the entire loan.

We equally cannot fault the trial court's finding that B.C. Rogers could not reasonably have anticipated the occurrence of this event. Both Rogers and Merrill Lynch's employees testified that the FmHA's loan restriction requirement was not "a normal condition" and came as a "surprise" to them. The bank's decision also was unforeseeable in light of its initial misgivings about retaining the guaranteed portion of the loan. It follows that B.C. Rogers cannot be charged with a duty to guard against this occurrence by a contractual provision.

3. The district court's oral opinion did not frame the analysis of the implied condition theory in terms of these elements. The opinion nonetheless made factual findings pertaining to each element. We review these findings under a clearly erroneous standard.

4. Citing *Pfisterer v. Noble,* 320 So.2d 383 (Miss. 1975), Merrill Lynch argues that the purpose of this contract must be ascertained "from the four corners of the instrument." *Id.* at 384. That case is inapplicable here. *Pfisterer* involved a dispute over the *meaning* of contractual language that was clear, definite, and unambiguous. In contrast, this case involves a dispute over the *purpose* of a contract that cannot be resolved by examining its language.

Indeed, it is the absence of a contractual provision that gives rise to this suit.

5. Although the contract also obligated Merrill Lynch to review application materials, to structure the loan, and to close the loan, the obligation to purchase or place the loan was the direct object of the contract. Merrill Lynch expended little time reviewing the loan application, gave little advice regarding the loan's structure, and did not participate in the closing. Yet, Rogers testified that he was satisfied with Merrill Lynch's performance of these functions. The provision of these other services did not motivate B.C. Rogers to contract with Merrill Lynch, but were incident to the loan placement.

Because an event central to the performance of this contract unexpectedly ceased to exist through no fault of either party, the district court properly implied a condition excusing B.C. Rogers' nonperformance. The judgment of the district court is AFFIRMED.