O'CONNELL MACHINERY COMPANY, INC., Plaintiff-Appellant-Cross-Appellee,

v.

M.V. "AMERICANA," her engines, boilers, tackle, etc., and Italia Di Navigazione, S.p.A. (d/b/a Italian Line), Defendants-Appellees,

Italia Di Navigazione, Defendant-Appellee-Cross-Appellant.

Nos. 580, 672, Dockets 85–7671, 85–7681.

United States Court of Appeals, Second Circuit.

Argued Dec. 18, 1985.

Decided July 18, 1986.

George F. Chandler III, New York City (Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City, of counsel), for plaintiff-appellant-cross-appellee.

Vincent M. DeOrchis, New York City (DeOrchis & Partners, Cary R. Wiener, C. Daniel Negron, New York City, of counsel), for defendant-appellee-cross-appellant.

Before OAKES, KEARSE, and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

O'Connell Machinery Company, Inc. ("O'Connell") appeals from a judgment of the United States District Court for the Southern District of New York, Whitman Knapp, *Judge*, dismissing its complaint against the ocean carrier, M.V. "Americana," her engines, boilers, tackle, etc. ("the Americana") and the Americana's parent shipping company, Italia Di Navigazione, S.p.A. ("Italia") in an action seeking damages for the total loss of O'Connell's gear generator machine allegedly sustained when the machine broke loose and fell on board the Americana while the vessel was

in transit. Italia cross-appeals from the district court's judgment dismissing its counterclaim against O'Connell for damage to six other containers on board that Italia maintains was caused by the falling of O'Connell's allegedly negligently packed machine.

O'Connell argues principally that the district court's decision improperly delegates to the shipper the carrier's obligation of ensuring proper stowage, erroneously approves on-deck stowage, and rests on insufficient or clearly erroneous findings of fact.

Italia refutes these claims on appeal. It also urges on cross-appeal that the district court erred in dismissing its counterclaim for damage to other cargo because, contrary to the district court's finding, the packer of O'Connell's machine was O'Connell's general agent, and hence O'Connell may be held liable for damage caused by negligent packing.

We hold that the carrier correctly avoided liability for damage to O'Connell's machine under the "insufficiency of packing" defense pursuant to the Carriage of Goods at Sea Act ("COGSA"), 46 U.S.C. § 1304(2)(n), and that O'Connell properly avoided liability for damage to other cargo because Italia failed to establish the requisite special agency relationship between O'Connell and the packer. We therefore affirm the judgment of the district court in all respects.

## BACKGROUND

On the night of September 28, 1981, the Americana, en route from Genoa, Italy to New York, was crossing the North Atlantic Ocean in heavy seas and strong winds, when O'Connell's 43,000 pound gear generator machine broke free of its wire lashings and plunged off a flat-rack container stowed on deck. The machine toppled down eight feet, destroying six containers of separate cargo beneath it, and landing in irreparably damaged condition. The flat-rack container remained firmly in position on deck in the third tier of bay number 5, as did a 1.5 ton crate of spare parts secured by separate lashings to the same flatbed.

O'Connell had purchased the machine from Sogimex S.p.A. of Milan, Italy. The invoice and bill of sale indicate that the purchase was "ex works," although the letter of credit stated the delivery term of the purchase contract as "F.O.B. Italian port." Andrea Merzario S.p.A. ("Merzario"), a transportation concern that owns containers and operates its own vessels, was engaged by either Sogimex or O'Connell to oversee the loading and securing of the machine to a flat-rack container and the transport thereof to port. There was evidence, however, that Merzario failed to oversee the loading and securing of the machine, and that O'Connell therefore undertook responsibility for the task. The machine, coated with grease, was packed "oversize" onto a flat-rack, to which it was tied with wire lashings, and was covered by a plastic foil tarpaulin. On September 5, 1981, Merzario's trucker picked up the packed machine at the Sogimex factory. There is disagreement over whether the machine was delivered to Italia in Genoa on September 5 or 18. In either case the parties agree that Merzario did not specifically indicate to the stevedores or other Italia personnel that the machine was packed "oversize" or that it otherwise required special stowage arrangements, and that on September 18, when the machine was presented for loading, Italia was already in the final stages of loading cargo aboard the Americana.

Ettore Oldrini, Italia's port planner in Genoa, designated a bay on the third tier of the deck of the Americana for stowage of O'Connell's machine. The cargo had been described to Oldrini. Oldrini testified during his examination before trial that it would have been more dangerous to stow the machine below deck, since there "it cannot be under control all the time as it is on deck" and since, if the machine fell while below deck, "it could have damaged the ship itself perhaps for two or three days before we noticed it." The machine fell while the ship was crossing the ocean. In 1982 this action was commenced and in

1984 a bench trial was held before Judge Knapp, who found for defendant. The complaint and counterclaim were dismissed on July 17, 1985. This appeal followed.

## DISCUSSION

This case requires us to resolve two principal issues regarding the rights and liabilities of an ocean carrier and a commercial shipper pertaining to damage to cargo in the normal course of transport. These issues are, first, the liability, if any, of the carrier where the cargo slips from a secure flat-rack on deck; and, second, the liability, if any, of the shipper where his fallen cargo causes damage to other cargo on board.[1] For the reasons set forth below, we affirm the judgment of the district court.

1. *Liability of Italia for the Damage to O'Connell's Machine.*

■ There is no question but that O'Connell demonstrated a *prima facie* case of damage to its gear generator machine. This shifted to Italia the burden of proof of an "excepted cause" of damage listed under COGSA, 46 U.S.C. § 1304(2)(a)–(p), and upon presentation of such proof the burden returned to the plaintiff to show that the carrier's negligence contributed to the damage or loss. *See, e.g., Quaker Oats Co. v. M/V Torvanger,* 734 F.2d 238, 241 (5th Cir.1984) (citing *Lekas & Drivas, Inc. v. Goulandris,* 306 F.2d 426, 432 (2d Cir. 1962)), *cert. denied,* —— U.S. ——, 105 S.Ct. 959, 83 L.Ed.2d 965 (1985). Here, Italia successfully raised the defense of "insufficiency of packing", 46 U.S.C. § 1304(2)(n), the district court having found that the sole cause of the slippage of O'Connell's machine was indeed the packing of the machine, for which Italia was never responsible.

■ In its findings of fact pursuant to Fed.R.Civ.P. 52(a), the district court found that the *sole* cause of the damage was the improper packing of O'Connell's machine. Our standard of review of a finding of fact is the clearly erroneous test, even as to findings going to "ultimate" facts. *Bose Corp. v. Consumers Union of United States, Inc.,* 467 U.S. 1267, 104 S.Ct. 3561, 82 L.Ed.2d 863 (1984). We cannot say that Judge Knapp's finding was clearly erroneous when he determined that the cause of the slippage was the packing, not the location of stowage. It is uncontroverted that the flat-rack on which the machine had been packed remained firmly in place in its bay even though the machine itself toppled during routine inclement weather. Further, the destruction of the machine complained of herein resulted not from wind, water, or sea spray—the risks generally associated with deck stowage—but from slippage and falling. Thus, even if, as O'Connell alleges, the machine also suffered some rusting from sea spray, such rusting would not constitute the damage at issue, namely, the total destruction of the machine from the fall.

If this finding of fact were the only point challenged by O'Connell, our task would be considerably easier. However, O'Connell raises two legal questions which require analysis: whether Italia negligently failed to inspect the wrapped machine and hence should not have been allowed the protection of the "insufficiency of packing" defense, and whether the deck stowage herein constitutes unreasonable deviation from the terms of the contract for carriage. Although a carrier's proof of an excepted cause under COGSA may often contain the proof that the carrier was not negligent and did not unreasonably deviate from the contract of carriage, *see generally* G. Gilmore & C. Black, Jr., The Law of Admiralty 182–85 (2d ed. 1975); Note, 27 Texas L.Rev. 525 (1949), we consider each of these potentially overlapping questions.

■ We are satisfied that the "insufficiency of packing" defense was available to Italia. The defense might not have been available to Italia had O'Connell demonstrated that Italia was negligent in failing to inspect the cargo before placing the open flat-rack container on deck on the third tier. *See Lekas,* 306 F.2d at 431–32

---

1. Neither Merzario nor Sogimex was a party to    this lawsuit.

(plaintiff bears burden of proof of carrier's negligence once carrier had shown an excepted cause of loss under 46 U.S.C. § 1304(2)(a)–(p) (Friendly, J.). However, the carrier, Italia, did not have a duty to inspect the contents of the cargo beneath the tarpaulin before assigning a stowage location aboard the vessel. To impose a *general* duty to inspect on the carrier would contravene Congress' granting the carrier an "insufficiency of packing" defense under the COGSA. Further, with some exactitude, Congress chose to impose on the carrier a duty to "load, handle, stow, carry, keep, care for, and discharge the goods carried," 46 U.S.C. § 1303(2), but not to inspect or otherwise ascertain the contents of cargo. *See Lekas*, 306 F.2d at 432. Thus, absent extraordinary circumstances to be shown by the shipper, the courts will not normally require the carrier to do more than Congress required of it pursuant to carefully drafted statutory language.

■ While there is some authority requiring the carrier at least to exercise due diligence in attending to visible packaging inadequacies, *see, e.g., Houlden & Co., Ltd. v. S.S. Red Jacket*, 1977 A.M.C. 1382, 1389 (S.D.N.Y.1977) (carrier personnel noted container damage but failed to prevent loading), *aff'd mem.*, 582 F.2d 1271 (2d Cir.1978), *cert. denied*, 439 U.S. 1128, 99 S.Ct. 1045, 59 L.Ed.2d 88 (1979), here the inadequate packaging of O'Connell's machine was not apparent to Italia, since, as the district judge found, the tarp concealed the securing wires. Absent such apparently inadequate packing or other extraordinary circumstances, Italia was not obligated to inspect the cargo. Rather, the shipper had an obligation to inform the carrier of special requirements regarding stowage location, and to make such special arrangements in advance of stowage, including payment of additional fees for special services when indicated. *See, e.g., Bache v.*

*Silver Line, Ltd.*, 110 F.2d 60, 62 (2d Cir. 1940) (L. Hand, J.); *Blue Bird Food Products Co. v. Baltimore & Ohio Railroad Co.*, 492 F.2d 1329, 1333 (3d Cir.1974) (railroad has no duty to inspect ordinary sealed cargo).[2] This view places the burden of inspection and ascertainment of special stowage needs on the party most likely to know of or best equipped to discover such needs. Further, the rule facilitates price differentiation in shipping based on special stowage needs and thus promotes efficient shipping industry practice.

O'Connell has not carried its burden of proving that Italia was negligent in not inspecting the cargo. The tarpaulin covering the machine constituted packaging that effectively concealed the cargo. Neither the size and weight of the machine nor the mere fact that some of the securing wires may have been exposed necessarily distinguished the packed and concealed cargo sufficiently from other forms of cargo in the ordinary course of business so as to have put Italia on notice that special stowage considerations were indicated. *Cf. Poliskie Line Oceaniczne v. Hooker Chemical Corp.*, 499 F.Supp. 94, 98–99 (S.D.N.Y. 1980) (no duty on carrier to open and inspect sealed container absent indication of abnormal or dangerous condition, assuming shipper otherwise appears to have complied with applicable shipping regulations). Custom and usage may well have permitted deck stowage on the Americana of cargo possessing the apparent weight and packing characteristics of O'Connell's machine. Indeed, as discussed *infra*, Italia adduced evidence supporting the stowage herein. Further, the district court credited at trial the testimony of Italia's Captain Pagan and the depositions of two Italia employees that there was nothing about the cargo that notified them of any special stowage needs. Certainly, the fact that the machine weighed some twenty tons, as disclosed on

---

**2.** As to whether the cargo had a customs seal before or after Italia received it, the district court made no finding. In our view, O'Connell failed to meet its burden of proving the absence of the seal. Two Italia employees and one transport consultant testified that they believed

the cargo was properly sealed. Further, the seal number was apparently duly recorded on the Bill of Lading, the CAP Container List, the Numerical List of Containers, and the Booking List.

the bill of lading, did not *per se* indicate special stowage needs; Joseph Tambini, a machine superintendent for Italia ships, testified that the hatch covers of the Americana are capable of supporting *ninety tons* and the pedestals can support *sixty tons*. As to the allegedly exposed wire lashings, in this case the district court did not find that any such inadequate packing was so patent and material that Italia personnel knew or should have known that special inspection and possible remedial measures were necessary. *Compare Houlden & Co.*, 1977 A.M.C. at 1391 (finding that lashings had not conformed to applicable regulations and that carrier recognized but failed to correct such nonconformity).

■ We hasten to note, however, that our opinion in this case does not necessarily approve deck stowage of similar cargo in other cases. Where a shipper sustains its burden of proving that the particular cargo possessed abnormal characteristics in comparison to other cargo with which the carrier deals or is equipped to deal, and that the carrier thereby recognized or should have recognized as a matter of custom or usage consequential special stowage needs and failed to provide for such needs or to apprise the shipper of them, the shipper might recover for damage caused by the carrier's negligence. Such abnormal characteristics might include excessive weight or size given the particular ship's stowage capacities, patently and materially inadequate packaging, or cargo known to be perishable or otherwise vulnerable to risks associated with particular forms of stowage. *Cf. American Foreign Insurance Association v. Seatrain Lines of Puerto Rico*, 689 F.2d 295, 300 (1st Cir.1982) (carrier liable for damage "if the defect in loading was or would have been patent or apparent upon a reasonable inspection, or if the carrier had notice of the defect"); *accord, Houlden & Co.*, 1977 A.M.C. at 1382.

■ O'Connell argues next that the "insufficiency of packing" defense ought not absolve Italia because the stowage of O'Connell's machine in an open flat-rack container on deck constituted an unreasonable deviation under 46 U.S.C. § 1304(4). On this issue, Italia bears the burden of proof, since the parties did not specifically agree to on-deck stowage. *See Encyclopaedia Britannica, Inc. v. S.S. Hong Kong Producer*, 422 F.2d 7 (2d Cir.1969), *cert. denied*, 397 U.S. 964, 90 S.Ct. 998, 25 L.Ed.2d 255 (1970); *see also Du Pont de Nemours International S.A. v. S.S. Mormacvega*, 493 F.2d 97 (2d Cir.1974).

■ Leaving aside, for the moment, the fact that the container was open, the mere fact that it was stowed *on deck*—even given its weighty contents—does not *per se* evidence an unreasonable deviation. *See Mormacvega*, 493 F.2d 97 (stowage of pallets of liquid in closed containers on deck held reasonable); *see also Electro-Tec Corp. v. S/S Dart Atlantica*, 598 F.Supp. 929 (D.Md.1984) (above deck stowage not *per se* unreasonable deviation). Built in 1974, the Americana was fitted with eight on-deck bays for deck stowage. *See Mormacvega*, 493 F.2d at 103 (noting deck stowage capability of some modern ships) (citing authority). Further, under *Mormacvega*, practical exigencies may necessitate on-deck stowage of cargo. *Id.* at 102. In the present case, space limitations at the time O'Connell's machine was presented for loading, as well as testimony by Italia personnel that safety and loading difficulties militated *in favor of deck stowage*, support the view that deck stowage was not unreasonable. We note in particular the deposition testimony, apparently credited by the district court, of Ettore Oldrini, Italia's port planner in Genoa. According to Oldrini, even if, *arguendo*, it had been feasible to load and move the 43,000 pound machine below deck and there had been stowage space available below deck, such stowage of O'Connell's machine would have been more dangerous than on-deck stowage. The machine could "not be under control [below deck] all the time as it [could be] on deck," and, in the event of slippage while below deck, "it could have damaged the ship itself perhaps for two or three days before we [would have] noticed it."

By contrast, having fallen while on deck, the machine "was noticed almost immediately" after it fell. O'Connell, having failed to alert Italia to any special stowage needs or to have proved deck stowage to have been unreasonable, may not now claim that Italia is liable for the damage to its cargo due to on-deck stowage.

Addressing the question of whether it was reasonable for Italia to stow an *open flat-rack* container on deck, we look to international commercial custom in the port in question. *See, e.g., Encyclopaedia Britannica,* 422 F.2d at 18. The district court found that custom in Genoa indeed permits stowage of flat-rack containers on deck. That finding was supported by, *inter alia,* the deposition of Giuseppe Isola, director of the C.A.P. Port Authority at Genoa, who was deposed as to stowage of flat-racks in Genoa in particular. There was also testimony that flat-racks are often stowed on decks in general international commercial custom in other ports. By contrast, O'Connell offered no evidence of any carrier out of Genoa that would *not* stow flat-racks on deck. Since commercial custom in Genoa apparently permits the stowage of flat-racks on deck, Italia may not be liable for following that custom unless the usage permitted under applicable commercial custom is shown to be unreasonable. *See Silver Line,* 110 F.2d at 61; *Haroco Co. v. The Tai Shan,* 111 F.Supp. 638, 642 (S.D.N.Y.1953) ("one of the factors in [determining] reasonableness is usage"), *aff'd sub nom. Frederick H. Cone & Co. v. The Tai Shan,* 218 F.2d 822 (2d Cir.1955). The evidence noted above amply supports the view that the usage in this case was not unreasonable. We note in particular the expert testimony of Naval Architect Philip Kimball of New York, who testified:

> From a technical standpoint, the [flat-rack] container can go basically anywhere. The configuration of the container is such that it could go anywhere. From an operational standpoint, my ex-

perience is that a container of this type generally goes on deck as well as below deck.

Thus, even if stowage of flat-rack containers on deck is not done *often,* clearly, it is done sometimes, and may constitute a technically sound method of stowage.

Finally, since the cause of the slippage and plunge was the packing, not the stowage (again, we note that the subject flat-rack container remained secure on deck), the deck stowage was not "linked to a cause of damage," and it therefore may not be deemed an unreasonable deviation. *See Insurance Co. of North America v. Dart Container Line Co., Ltd.,* 629 F.Supp. 781, 786–87 (E.D.Va. 1985); *see also Mormacvega,* 493 F.2d at 101 (carrier liable for "material" breach of contract). Thus, on the basis of the explicit finding by the district court as to sole causation, and of the "insufficiency of packing" defense, of which Italia properly availed itself, we affirm the judgment of the district court on O'Connell's claim. We therefore turn to Italia's cross-appeal.

### 2. *Liability of O'Connell for Damage to Other Cargo.*

On cross-appeal, Italia argues that the district court erred in dismissing its counterclaim against O'Connell for damage to six containers of cargo allegedly caused by the slippage and plunge of O'Connell's machine. Italia argues that the packing was done by Merzario, who acted for such purposes as O'Connell's agent, and thus O'Connell may be held liable for the damage to other cargo. The district court found the record inconclusive as to who engaged Merzario to pack or oversee packing of the machine. We affirm the judgment of the district court on two grounds.

First, assuming that Merzario packed or was responsible for the packing of the machine,[3] it is unclear from the

---

**3.** O'Connell argued at trial that Merzario did not actually pack the machine, but that it had a responsibility to do so and subcontracted such responsibility to another company. O'Connell

introduced evidence that Merzario had served as its forwarder on several occasions, and that on the occasion herein, Merzario's function insofar as O'Connell was concerned was solely to

evidence that Merzario thereby acted as an agent of anyone, as opposed to acting as an independent contractor. *See Koninklijke Nedlloyd BV v. Uniroyal, Inc.,* 433 F.Supp. 121, 128 (S.D.N.Y.1977) (holding forwarder an independent contractor). There was evidence that Merzario served as forwarder for other firms. *Cf. Consolidated Freightways Corp. v. Admiral Corp.,* 442 F.2d 56, 63 (7th Cir.1971) (noting service for others as one indication of independent contractor status). Further, we find no record evidence that O'Connell controlled or supervised Merzario in the performing of packing and other forwarding tasks, proof of which could constitute indicia of agency. *See Koninklijke,* 433 F.Supp. at 128. Thus, even if, consistent with the invoice description of O'Connell's purchase contract as "ex works," O'Connell had assumed responsibility for arranging for forwarding (which might include packing), Italia has not met its burden of showing by a fair preponderance of the evidence that the forwarder served as O'Connell's *agent.*

Second, even construing, *arguendo,* Merzario as O'Connell's *agent,* we think O'Connell has met its burden of proving a special, rather than a general, agency relationship. We agree with Italia that a third person dealing with an agent generally may presume the agent to be a general agent. *See, e.g., Songbird Jet Ltd., Inc. v. Amax, Inc.,* 581 F.Supp. 912, 919 (S.D.N.Y. 1984), *aff'd without opinion,* 779 F.2d 39 (2d Cir.1985); *Graves v. Miami Steamship Co.,* 29 Misc. 645, 61 N.Y.S. 115, 116 (App. Term 1899). However, we disagree with Italia that O'Connell has failed to rebut that presumption with evidence of special agency. There was evidence that, although the original invoice indicated that the contract was "ex works," the subsequent letter of credit indicated "F.O.B. Ital-

ian Port," and that Sogimex and O'Connell acted consistently with that letter, with Sogimex handling Italian land transport and O'Connell paying for ocean-related expenses. This evidence would support the inference that Merzario performed certain services for O'Connell, such as arranging for appropriate shipping and handling necessary documents, but that in packing or overseeing packing of the machine, Merzario, if an agent, acted on behalf of Sogimex.[4] Having failed to prove that O'Connell or its agent packed the machine, Italia's counterclaim was properly dismissed.

### CONCLUSION

We have considered the parties' other arguments, and we find them to be without merit. For the above-stated reasons, the judgment of the district court is affirmed.

---

arrange for "Roll-on/Roll-off" loading onto a suitable vessel, to book an oceanliner, and to handle commercial documents. In any event, we can accept the district judge's finding that Merzario actually packed the machine or was responsible for such packing.

**4.** In an F.O.B. contract, of course, the seller bears the risks associated with placing goods

"into the possession of the carrier." U.C.C. § 2–319(1). However, since Italia did not name Merzario or Sogimex in its counterclaim for damage to the six containers, we need not resolve which of these nonparty entities, if either, would be liable for damage to other cargo caused by the improper packing and consequential slippage of O'Connell's machine.